[Civ. No. 6038. Third Appellate District.—March 21, 1939.]

AMERICAN STATES WATER SERVICE COMPANY OF CALIFORNIA (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Respondent.

Paul Overton and R. G. Blanchard for Appellant.

U. S. Webb, Attorney-General, Earl Warren, Attorney-General, and H. H. Linney and James J. Arditto, Deputies Attorney-General, for Respondent.

Newmark & Strong and Geo. Barry Likens, as *Amici Curiae,* on Behalf of Appellant.

THOMPSON, J.—This is an appeal from a judgment which was rendered against the plaintiff after a demurrer to the complaint had been sustained without leave to amend the pleading. The suit was commenced to recover franchise taxes paid by the appellant in the sum of $10,178.97, for the privilege of conducting its business in California during the year 1935. The taxes were paid under protest.

The appellant is a California corporation affiliated with its parent company, the American States Public Service Corporation of Delaware, which owns the entire capital stock of the American States Water Service Company. March 15,

1935, the appellant filed with the state a consolidated report of the business of both corporations transacted in California during the year 1934, as authorized by the Bank and Corporation Franchise Tax Act of California, prior to its amendment in June, 1935. (Stats. 1929, p. 19, and amendments. Deering's Gen. Laws of 1937, p. 3851, Act 8488.) In first computing the franchise tax for the year 1935, based on the consolidated report of the business transacted during the previous year, at the rate of 2 per cent of the net income, as provided by section 4 of that act as it existed prior to the amendment, it appeared that although the appellant earned profits in the year 1934, the consolidated report indicated that the affiliated corporations sustained a net loss of $296,-338.98. Since the act then permitted the profits of one affiliated company to be offset by the losses of another, it was assumed there was no net profit upon which a tax could be lawfully computed for the year 1935, and a nominal tax of $25, as provided by the act, was therefore paid by the appellant March 15, 1935, for the privilege of doing business in California for that entire calendar year. Section 29 of that act then provided that the franchise tax became a lien on appellant's property on March 1st, to secure its payment.

In June, 1935, after payment by the appellant of $25 as franchise tax for that year the Bank and Corporation Franchise Tax Act was amended by increasing the rate of the tax from 2 per cent to 4 per cent of the net income for the previous year, by abolishing the permit for affiliated corporations to file a consolidated report of their receipts and disbursements, and by revoking the right to offset the profits of one affiliated corporation with the losses of another, as provided in section 14 thereof. (Stats. 1935, sec. 4 (3), p. 1246, Stats. 1935, sec. 14, p. 995.)

The second paragraph of section 14 of the act, as it existed prior to the amendment of 1935, read in part:

"An affiliated group of . . . corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for any taxable year in lieu of separate returns."

The third paragraph of section 14 then read in part:

"If a consolidated return is made subject to the provisions of this section the tax imposed under this act *shall be com-*

*puted as a unit upon the consolidated net income of the group* except as hereinafter provided.''

The preceding deleted portions of section 14 were restored by the adoption of section 13½ of the act in 1937. (Stats. 1937, p. 2335.) But the last-mentioned amendment has no application to the present suit.

Section 14, as amended in 1935, which is the subject of controversy on this appeal, read in part:

''In the case of two or more corporations . . . owned or controlled directly or indirectly by the same interests, the commissioner is authorized to distribute, apportion or allocate gross income or deductions between or among such corporations or banks, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such corporations or banks.

''In the case of a corporation doing business within the meaning of this act, whether under agreement or otherwise, in such a manner as directly or indirectly to benefit the members or stockholders of the corporation, or any of them, or any person or persons, directly or indirectly interested in such business, by rendering services of any nature whatsoever, or acquiring or disposing of its products or the goods or commodities in which it deals, at less than a fair price therefor; or where such a corporation, owned and/or controlled either directly or indirectly by another corporation or corporations, renders services of any nature whatsoever, or acquires or disposes of the products of the corporations so owning and/or controlling such corporation, in such a manner as to create a loss or improper net income, the commissioner, in order to prevent evasion of taxes or clearly to reflect the income of such a corporation, may require a report consolidated with the owning and/or controlling corporation or corporations, or such other facts as he deems necessary, *and may determine the amount which shall be deemed to be the entire net income allocable to this State of the business of such corporation for the calendar or fiscal year, and compute the tax on such net income.* In determining the entire net income the commissioner shall have regard to the fair profits which, but for any agreement, arrangement or understanding, might be or could have been obtained from dealing in such products, goods or commodities.''

Section 4, subdivision 8 of the act as amended in 1935 (Stats. 1935, p. 1247) declares that:

"The provisions of this subdivision, *and of all other amendments to this act enacted during the year 1935, shall apply to taxable years beginning after December 31, 1934.*"

That provision clearly indicates the intention of the legislature to make the amendment of both sections 4 and 14 of the act applicable to all franchise taxes due or payable for the entire calendar year of 1935.

In accordance with the provisions of the act as amended in 1935, the appellant's franchise tax for the calendar year beginning January 1, 1935, was computed according to the revised law without offsetting its profits with the losses of the parent Delaware corporation, and appellant was promptly notified that it was indebted to the state of California in the sum of $10,178.97 for franchise taxes for the calendar year beginning with January 1, 1935. It is conceded the estimated tax last mentioned was correctly computed according to the method designated by the amendment of section 14 in 1935. The taxes were paid under protest in the amount demanded. This suit was then commenced to recover the money alleged to have been improperly levied and unlawfully collected. A demurrer to the complaint was sustained on the ground that it fails to state facts sufficient to constitute a cause of action. A judgment was rendered against plaintiff to the effect that it take nothing by this action. From that judgment this appeal was perfected.

The appellant contends that the additional franchise taxes assessed and levied against it for the year 1935 are void for the reasons:

"First: The said amendments to section 14 of the act were not intended by the Legislature to apply in the computation of taxes for the year 1935 and, under the terms of the act, should not be so applied;

"Second: The said amendments, as applied to the computation of taxes for the year 1935, constitute retroactive legislation; and

"Third: The said amendments, being retroactive in effect, are unconstitutional for the reason that they deprive the appellant of its property without due process of law."

The questions to be determined are, therefore: 1. Did the legislature have authority to amend the Franchise Tax Act

so as to increase the taxes for 1935 after the appellant had filed its consolidated report and had paid the nominal tax of $25 for that year; 2. Was the legislature authorized to abolish the right of affiliated corporations to offset the profits of one company with the losses of another as shown by their consolidated report; and, 3. Did the legislature intend that amendment of section 14 to apply to franchise taxes for the year 1935, and if so is that amendment retroactive or unconstitutional in its application to the taxes of that year.

The chief issue is whether the application of the amendment of section 14 to the franchise taxes of 1935 deprives the appellant of vested rights which it acquired by previously paying its taxes for that year according to the provisions of the act as it existed before the amendment became effective, and whether such application of the law resulted in impairing the obligations of a contract.

 The legislature is authorized to enact statutes providing for the taxing of franchises of corporations engaged in doing business within the state, based upon their annual net income. (Const. Cal., art. XIII, sec. 16, subd. 2 (a).) Such taxes are ordinarily termed excise taxes, which are paid for the privilege of conducting business within the state. (2 Cooley on Taxation, 4th ed., p. 1711, sec. 845; 26 R. C. L. 236, sec. 209; 61 C. J. 242, secs. 226, 227.) In California both the Constitution and the authorities classify franchises for taxation purposes as property. (Const. Cal., art. XIII, sec. 1; 24 Cal. Jur. 85, sec. 69; 12 Cal. Jur. 692, sec. 14.) A franchise is described as incorporeal or intangible property. (*Roth Drug, Inc.,* v. *Johnson,* 13 Cal. App. (2d) 720, 734 [57 Pac. (2d) 1022].) In *Pacific Co., Ltd.,* v. *Johnson,* 212 Cal. 148, at page 154 [298 Pac. 489], it is said:

"A franchise tax is a tax imposed upon a corporation for the right or privilege of being a corporation *or of doing business in a corporate capacity,* and differs materially from property taxes as levied for state and municipal purposes in the basis prescribed for computing the amount of the tax."

 It is apparent the franchise tax authorized by the act in question is levied and paid by corporations as licenses or permits to conduct their businesses for the period of the entire calendar year in the state of California. Regardless of what the tax may be called, it should be treated in its application to the law as a license or excise tax.

■ The mere fact that the act is deemed to be retrospective with relation to its application to that portion of the year 1935 which had elapsed prior to the adoption of the amendment does not necessarily render it void. .

A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute. The terms "retrospective" and "retroactive" are interchangeable. (*City of Los Angeles* v. *Oliver*, 102 Cal. App. 299, 309 [283 Pac. 298] ; 5 Cal. Jur. 747, sec. 142; 12 C. J. 1084, sec. 778.) Constitutions in some jurisdictions prohibit the enactment of retrospective laws. ■ Neither the federal Constitution nor the Constitution of California prohibit the enactment of retrospective laws. (5 Cal. Jur. 747, sec. 142.) In California a statute is not invalid merely because it is intended to operate retrospectively. It may, however, be invalid if it deprives one of vested rights which are bound to be respected or protected by the state, or if it impairs the obligations of a contract. (5 Cal. Jur. 748, sec. 143.)

■ It is true that statutes will be construed to operate prospectively rather than retrospectively unless the contrary intention clearly appears. (*Hopkins* v. *Anderson*, 218 Cal. 62 [21 Pac. (2d) 560] ; *Pignaz* v. *Burnett*, 119 Cal. 157 [51 Pac. 48] ; 5 Cal. Jur. 561, sec. 12.) In the present case the legislature has left no doubt that it intended section 14 of the Bank and Corporation Franchise Tax Act, as amended in 1935, and all other 1935 amendments of that act, to operate retrospectively and apply to the levying of franchise taxes for the calendar year beginning January 1, 1935. The amendment to section 4 of that act specifically declares that :

"The provisions of this subdivision, *and of all other amendments to this act enacted during the year 1935, shall apply to taxable years beginning after December 31, 1934.*"

■ We are of the opinion the 1935 amendment to section 14 of the franchise tax act does not unlawfully interfere with the vested right of the appellant to conduct its business in California during the year 1935 merely because that corporation paid a nominal tax of $25 for that privilege before the amendment became effective. This is true for the reason that the tax is in the nature of an excise which is always within the power of the legislative department of government to change or increase during the term for which

it is imposed. (*Alaska Consolidated Canneries* v. *Territory of Alaska,* 16 Fed. (2d) 256; *Patton* v. *Brady,* 184 U. S. 608, 619 [22 Sup. Ct. 493, 497, 46 L. Ed. 713]; *Wisconsin & Michigan Ry. Co.* v. *Powers,* 191 U. S. 379, 387 [24 Sup. Ct. 107, 48 L. Ed. 229].) The definition of "vested rights", which may not be interfered with by retrospective laws, is given in 5 California Jurisprudence, page 748, section 143, as follows:

"The words are generally used as implying interests which it is proper for the state to recognize and protect, and of which the individual cannot be deprived arbitrarily without injustice."

To the same effect the definitions of "vested rights" is also found in the case of *City of Los Angeles* v. *Oliver, supra.*

Under circumstances similar to those which exist in the present case it is said in the Alaska Consolidated Canneries case, *supra:*

"The plaintiff in error contends, first, that the Legislature of the territory lacked constitutional power to increase or change the amounts to be paid for licenses issued prior to the passage of the act of 1923; and, second, that the act of 1923 by its terms is not retroactive.

"The first contention is without merit. 'A license is merely a permit or privilege to do what otherwise would be unlawful, *and is not a contract between the authority,* federal, state or municipal granting it *and the person to whom it is granted;* neither is it property or a property right. . . . The amount of a license fee or tax ordinarily may be increased or decreased at any time in the discretion of the body imposing it. Where a city has full power to tax an occupation, *it may increase the rate on a particular class of persons engaged therein at any time before the expiration of the period for the enforcement of the tax, even though such increase is made after the tax first levied has been paid.' "*

Explaining the reason for such authorized change or increase of the rate of taxes for the privilege of conducting a business, the preceding opinion also states:

"They are, as said in Cooley on Taxation, p. 1: 'The enforced proportional contribution of persons and property, levied by the authority of the state for the support of the government and for all public needs,' and so long as there exists public needs just so long exists the liability of the in-

dividual to contribute thereto. The obligation of the individual to the state is continuous and proportioned to the extent of the public wants. No human wisdom can always foresee what may be the exigencies of the future, or determine in advance exactly what the government must have in order 'to provide for the common defense' and 'promote the general welfare'."

■ Nor does the 1935 amendment of section 14 of the Franchise Tax Act, which, in effect, increases the taxes for that year, and which tax the appellant was compelled to pay for the privilege of conducting its business in California, impair the obligations of a contract. Many authorities hold that the payment of excise taxes for the privilege of doing business does not constitute a contract prohibiting the state from changing the rate or increasing the taxes during the term for which the license or permit is issued. The case last cited determines that very point as also does the Wisconsin & Michigan Ry. Co. case, *supra*, the language of which, in that regard, is quoted with approval in the Alaska Consolidated Canneries case.

The case of *Fullerton Oil Co.* v. *Johnson*, 2 Cal. (2d) 162 [39 Pac. (2d) 796], determines the essential issues of this suit. In that case the state treasurer appealed from a judgment which was rendered against him for failure to answer the complaint after his demurrer thereto had been overruled. The Supreme Court reversed the judgment. The Fullerton Oil Company sought to recover franchise taxes paid under protest for the privilege of doing business in California for the calendar year of 1931. The taxes were computed pursuant to section 8 (g) of the Bank and Corporation Franchise Tax Act, as amended February 27, 1931. It was contended the method of computing franchise taxes, previously specified in that act, which was in full force for about two months of that calendar year before the amendment was adopted, determined the appellant's liability for that year and conferred vested rights upon the oil company in that respect, which the state could not lawfully interfere with by thereafter changing the law so as to increase the taxes. The Fullerton Oil Company asserted that the amendment to section 8 (g) of the act was discriminatory, retroactive and unconstitutional. The Supreme Court held otherwise. It said in that regard:

"The last contention of respondent is equally without merit. Respondent points out that prior to the 1931 amendment to section 8 (g) it could compute its depletion allowance on the basis of the 1928 values of its properties, and that since that amendment it is deprived of that privilege. Respondent also points out that under section 2 of the act the tax for any year is computed upon the basis of the net income for the previous year. Section 4 of the act provides that taxes for the current year 'shall accrue on the first day after the close of the "taxable year",' which taxable year, in respondent's case, corresponds with the calendar year. It therefore follows that respondent's 1931 tax 'accrued' on January 1, 1931, and was computed upon the net income for 1930. The tax, although accruing on January 1, 1931, was not payable until March 15, 1931, under section 23 of the act, and under section 29 the tax became a lien on the first Monday in March, 1931. Under the provisions of section 13 of the act the taxpayer any time between January 1st and March 15th can file his return. The 1931 amendment to section 8 (g) changing the method of computation became effective February 27, 1931.

"Based on these sections respondent contends that since its tax for 1931 accrued on January 1, 1931, based on its net income for 1930, at which time 1928 values could be used in computing depletion, the 1931 amendment denying that privilege cannot be used to compute the 1931 tax. To permit the February 27, 1931, amendment to apply in computing the 1931 tax, according to respondent, would be to give that amendment an unlawful retroactive effect. Respondent strenuously contends that its tax liability for 1931 became a determined and accrued liability before the effective date of the amendment. To this contention there is a conclusive answer. The retroactivity alleged is more apparent than real. If the 1931 amendment be applied in computing the 1931 tax, such application is to give the amendment a prospective rather than a retroactive operation. Although under the act the net income earned in 1930 is used as a base for computing the tax due for 1931, the tax collected in 1931 is not for the privilege of doing business in 1930 but is a tax for the privilege of doing business as a corporation in California for 1931. It is a tax for the privilege of exercising a corporate franchise for the entire year 1931—

that is, the current year when the act here involved became effective. The privilege being taxed is a present and continuing privilege, the amount of the tax being measured by the transactions of a prior year. Although, under the act, the tax accrued on January 1, 1931, and became a lien on the first Monday in March, 1931, the tax imposed for that year was for the entire current year. There is no reasonable or legal basis for contending that a taxpayer is entitled, regardless of legislative action, to have current taxes computed on the same basis as past taxes have been assessed. It is well settled that taxes for the current year may be changed any time during the year, and, in fact, additional taxes may be imposed during the current year on the same subject of taxation. (*Continental Oil Co.* v. *Walker,* 285 Fed. 729; *People* v. *Kelsey,* 116 App. Div. 97 [101 N. Y. Supp. 902]; affirmed, 188 N. Y. 541 [80 N. E. 1116]; *American Refrigerator Transit Co.* v. *Adams,* 28 Colo. 119 [63 Pac. 410]; *Milliken* v. *United States,* 283 U. S. 15 [51 Sup. Ct. 324, 75 L. Ed. 809].)''

█ The case from which we last quoted clearly determines that the legislature has authority to amend the Bank and Corporation Franchise Tax Act to increase taxes or to change the method of computing them so as to become effective for the entire calendar year during which the amendment occurs; that such an amendment to the franchise tax act may lawfully operate retrospectively. That case is in accordance with many decisions which hold that statutes providing for excise taxes for the privilege of conducting business are subject to change or increase at any time during the term for which they are imposed, to provide for necessary financial needs of the state. The clear implication to be drawn from those decisions is that such increase of taxes, after the beginning of the term for which they are imposed, does not interfere with vested rights nor deprive the taxpayer of property without due process of law. All rights and privileges acquired by payment of license taxes are not immune from change. Ordinarily such privileges are subject to change.

█ The appellant recognizes these principles, but distinguishes between the Fullerton Oil Company case and the present suit by pointing out the fact that it actually paid the franchise taxes for 1935, computed according to the law as it then existed, before the amendment of section 14 of the act occurred. It is also suggested that the obligation to pay

the tax became a lien under section 29 of the act before the amendment became effective. We are of the opinion neither of those circumstances alters the power of the legislature to increase the taxes or change the method of computing them during the term for which they are imposed. Section 29 of the act vests a lien on March 1st to secure the payment of whatever franchise tax may be lawfully imposed under the statute. The taxpayer acquires no added rights by virtue of the lien. The lien is for the benefit and security of the state to enable it to enforce the payment of the tax. (Sec. 2874, Civ. Code.) Nor does the mere payment of the taxes prior to the change of the law render the amendment unconstitutional or void with respect to its application to the entire calendar year. Since the legislature has the right to change the rate of taxation during the current year, the amount of franchise tax which was paid by the appellant prior to the amendment was erroneously computed on the basis applicable to the previous year. Neither the payment of taxes nor the vesting of the lien prior to the amendment of the act conferred upon the appellant vested rights which prevented the legislature from increasing the taxes during that current year.

The mere filing of a consolidated report pursuant to the act as it formerly existed did not confer upon the appellant vested rights with respect to the amount of taxes which might be lawfully levied. Like the affidavit which is required to be filed with the tax assessors, that consolidated report is merely received as evidence of the receipts and disbursements of the affiliated corporations for the purpose of computing the franchise taxes. It is not necessarily controlling in that regard. The consolidated report was authorized to be filed incident to the computing and levying of taxes. The vital portion of section 14 of the act which formerly determined the method of computing taxes prior to the amendment of 1935, provided that "The tax imposed under this act *shall be computed as a unit upon the consolidated net income of the group*". Section 14 was amended in 1935 to provide that the commissioner "may determine the amount which shall be deemed to be the entire net income allocable to this state of the business of such corporation for the calendar or fiscal year, and compute the tax on such net income". The act provides that the calendar year for which

the franchise taxes are computed shall commence with the first day of January of each year.

We are of the opinion the amendment of both section 4 and section 14 of the act in June, 1935, was valid and determinative of the amount of franchise tax which was due from the appellant for the current year of 1935.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1939.