[Civ. No. 12920.   First Dist., Div. One.   Dec. 5, 1945.]

J. H. HANDLON, Respondent, v. HARRY K. WOLFF, etc., et al., Appellants.

John J. O'Toole, City Attorney, and Norman Sanford Wolff, Deputy City Attorney, for Appellants.

Milton Marks and Morris Lowenthal for Respondent.

WARD, J.—This is an appeal by defendants from an order of the superior court granting a petition for a writ of mandate compelling the civil service commissioners of the City and County of San Francisco to admit the petitioner, J. H. Handlon, to an office designated as "G 102 Claims Agent Municipal Railway."

Preliminarily it may be stated that the municipality, the operator of a street railway system under a city and county freeholder's charter provision, purchased a privately owned competitive company to be operated in conjunction with the municipally owned railway. Since the effective date of the freeholder's charter, adopted in 1932 (Stats. 1931, p. 2973), there has been a provision for positional rights of those theretofore in the employ of a municipal utility and also a provision to place employees of utilities which might be acquired. The portion of the charter relevant to the issues raised herein reads: "All employees engaged in public utility work at the time this charter shall go into effect, and who have been permanently appointed to their respective positions in conformity with the civil service provisions of this charter, shall become employees of the public utilities commission under the classification held by each such employee at such time. All persons employed in the operating service of any public utility hereafter acquired by the city and county at the time the same is taken over by the city and county, and who shall have been so employed for at least one year prior to the date

of such acquisition, *shall be continued in their respective positions and shall be deemed appointed to such positions, under, and entitled to all the benefits of, the civil service provisions of this charter;* provided, however, that no person who is not a citizen of the United States shall be so continued in or appointed to his position. All persons residing outside the city and county claiming the benefit of this provision and who are not engaged on such utility work outside of the limits of the city and county shall be allowed a reasonable time, not exceeding one year, to become residents of the city and county.'' (Italics added.) (Stats. 1931, pp. 3049-3050, § 125.) No question of noncitizenship or nonresidence is raised in this proceeding. Those provisions are quoted only for the purpose of indicating that even under adverse circumstances it was intended that employees of an acquired private utility should be given the opportunity of continuation ''in their respective positions.''

It is the contention of appellant city that section 125 operates to blanket into civil service only those employees in positions existing at the time of consolidation and not into any new positions created by reason of the consolidation. Appellants admit that the allegations of the complaint covering the duties of ''claims agent'' in the acquired company ''were true'' and that in that respect the ''findings follow those allegations.'' The findings show that ''For a period in excess of 36 years, namely ever since on or about the first day of January, 1908, the petitioner was an employee, namely, Claim Agent, in the operating service of Market Street Railway Company (and its immediate predecessor), a public utility acquired by respondent the City and County of San Francisco on September 29, 1944. For a period in excess of 18 years, namely, from or about the month of January, 1926, the petitioner was also an employee in the operating service of said public utility in the capacity of Chairman of the General Safety Committee of said Market Street Railway Company. The petitioner, ever since the respective dates of his employment in the operating service of said Market Street Railway Company (and its immediate predecessor) in the furtherance of his duties, acted and served continuously therein in said capacities and was so acting and serving in both of the said capacities for and in behalf of said public utility at the time of its acquisition by the City and County of San Francisco. . . .

"As Claim Agent, the petitioner . . . directed and assigned all work of the employees of said Claims Department and had full charge thereof. The services and duties of the petitioner as Claim Agent included the supervision and direction of the adjusting of all claims against said Market Street Railway Company arising out of injuries, deaths and property damage; the investigation of all accidents wherein the Market Street Railway Company was or might be involved and wherein claims against said company were or might be asserted; the preliminary preparation of all cases for the Law Department of the Market Street Railway upon which suits had been commenced; the compilation of periodic tabulations upon a comparative basis respecting the types and severity of accidents upon the various street railway lines operated by Market Street Railway Company; the compilation of data upon a comparative basis and at frequent intervals respecting the cost and expense to the said public utility arising out of accidents on the various street railway lines operated by Market Street Railway Company and arising out of accidents of various types and classes with respect to passengers and nonpassengers and with respect to vehicular and pedestrian accidents. In addition, the petitioner as Claim Agent of said public utility directed and participated in the preparation of statistical data concerning the operation of street railway systems in San Francisco and in other communities, inclusive of the frequency and severity of various types of accidents and the frequency and extent of claims resulting therefrom. . . .

"As Chairman of the General Safety Committee of said Market Street Railway Company, the petitioner possessed and fulfilled the duty and function of determining the causes giving rise to accidents in the operation of the street railway lines owned and conducted by Market Street Railway Company for the purpose of ascertaining and finding means of reducing the frequency and severity of such accidents and establishing rules and method of safety to minimize the frequency and severity of such accidents and reducing the cost to said company arising out of claims by reason of accidents occurring in the operation of said railway lines. . . .

"All of said functions and duties of petitioner continued to be performed by petitioner to the date of the filing of his petition herein on September 28, 1944, and were being performed by him at the time said public utility was acquired by the City and County of San Francisco." All of the court's

findings are supported by evidence or reasonable inferences that may be drawn from all the facts and circumstances.

The court further found that petitioner Handlon was designated by the Civil Service Commission as "a Claims Adjuster." Specifically the court found that such classification "therein and thereby fixed the compensation schedule for said position at $350.00 per month with a maximum of $435.00 per month, thereby knowingly demoting the petitioner in violation of Section 125 of the charter to a subordinate and inferior position as described therein and thereby reducing his compensation from $625.00 per month to $350.00 per month."

The court also found that at the time of the acquisition of the private utility there was a classification—"G 102 General Claims Agent, Municipal Railway" — which described a "claims agent" as one who directs investigations necessary for settlement of claims resulting from accidents, and included among his duties that he "assigns and reviews the work of claims adjusters, investigators, appraisers." In this connection the court found that the Board of Supervisors adopted an ordinance wherein and whereby the "City and County of San Francisco provided for the classification denominated by the Civil Service Commission as 'G 102 General Claims Agent' and for the classification denominated 'G 106 Claims Adjuster' and fixed the compensation of said General Claims Agent at between $500.00 and $600.00 per month, and for the Claims Adjuster at between $350.00 and $435.00 per month." From the findings it appears that at the time of the consolidation a person holding the position of "claims adjuster," ("an inferior and subordinate position to that of 'Claims Agent' "), was assigned to the position of "general claims adjuster," which in fact made such appointee the superior to all others in the claims department. Further, the court found that a claims agent is the head of a claims department, a position invariably superior to that of claims adjuster; and that Handlon's classification as a "claims adjuster" was "sham and pretended" and in effect reduced him to a subordinate position.

During the trial of the present case the Civil Service Commission announced a promotional examination for the position of "G 102 General Claims Agent, Municipal Railway." In this connection the court found that the terms and conditions of the promotional examination have been so devised and prescribed that Handlon would be deprived of his right to be continued in his position pursuant to section 125 of the charter

inasmuch as "under the pretended or sham announcement that the examination is promotional in character, . . . in fact the petitioner if successful would be regaining only the position from which he had been improperly demoted," and that under the terms of the examination 100 points out of a total attainable 1,000 would be lost to Handlon because he had not been previously an employee of the city and county.

On the basis of these findings the trial court in the peremptory writ commanded the city and county and certain official representatives thereof to admit Handlon to the occupancy, title, emoluments and right of position of "G 102 Claims Agent Municipal Railway," effective as of the date of acquisition of the private utility, the Market Street Railway, pursuant to the provisions of section 125 of the charter. By the peremptory writ the municipality was also ordered to discontinue any proceedings for the promotional examination and ordered to note in appropriate books that other employees holding the position of "G 106 Claims Adjuster" were inferior and subordinate to "G 102 Claims Agent Municipal Railway."

Appellants admit that "The true standard must be this: a person is entitled, by reason of the Charter provision, to a position embodying the same authority and duties as possessed in the public utility, but nothing more and limited solely to those activities which are carried on by the public utility." ▌ In effect section 125 provides that if one has been employed for one year in an acquired utility such employee shall be deemed appointed to such position and entitled to "all benefits" of the service under the municipality. "Such position" if not the identical position should be interpreted as meaning a similar position in kind and degree—one that in salary, authority, duties, etc., is reasonably comparable to the employee's former position. If no comparable position exists then it appears that "such position" by the terms of the charter is "continued." The "position" in the private utility is adopted as a city position. The legislative or administrative means of continuing the employee in his position is a mechanical problem subordinate to the declaration in the freeholder's charter that he "shall be continued" in his position.

▌ The portion of the peremptory writ which provides that Handlon is entitled to a position as "Claims Agent Municipal Railway" from the date of the acquisition, and to enjoy the emoluments thereof, is based upon questions of fact:

(1) Are there any positions in the civil service of the munici-
pality which are comparable to that the petitioner held with
the private utility?   (2) Which position is most comparable
to that held by petitioner with the private utility in which
position insofar as possible, he is to be continued by the terms
of the charter?   There is substantial evidence to uphold the
court's finding that the position of G 102 General Claims
Agent, Municipal Railway was the one most similar to the
position held by him in the private utility and the one to which
he was entitled under section 125 of the charter.

Under circumstances not identical but similar in deter-
mining the principle involved here, namely, the right of a
governmental agency to reclassify, demote, suspend or expel,
in *Bruce* v. *Civil Service Board,* 6 Cal.App.2d 633, 637 [45
P.2d 419], the court said: "A civil service commission derives
its powers from the charter creating it and may not exercise
any not directly given or necessarliy implied from those con-
ferred." If Handlon had a right to the position of claims
agent it was beyond the power of the commission to take that
right away. (*Viner* v. *Civil Service Com.,* 59 Cal.App.2d 458
[139 P.2d 88].)

█ The part of the writ providing that other *employees*
in the "claims adjuster" type of position hold the same as
inferiors and subordinates to the position of "G 102 Claims
Agent Municipal Railway" is not an issue in this case.   The
only question to be determined here is the position Handlon
occupied in the private utility and his rights to a comparable
position.   The other "employees" were not parties to this
proceeding.   The legal rights of others could only be pertinent
insofar as the duties of the various positions might throw
some light on the rights of Handlon.   For the same reason
the right of the Civil Service Commission to hold a promo-
tional examination for a "G 102 General Claims Agent Mu-
nicipal Railway" is not an issue in determining the right of
Handlon to that classification under section 125 of the charter.
Only the right of the commission to compel Handlon to take
and pass the examination could be in issue.   Therefore, the
writ as issued should be modified by striking therefrom all
matters not in issue as above enumerated.

█ In passing it might be noted that there is a stipulation
on file that prior to the filing of the notice of appeal, Handlon
resigned from the city and county as an employee.   The resig-

nation became effective on January 10, 1945. The resignation terminated any duty on the part of the municipal railway to continue a position comparable to the position held by him previously with the acquired private utility. However, it has been necessary to adjudicate what his original rights in the premises were in order to determine to what compensation he was entitled during his tenure in office from the date of the acquisition of the private utility to the date of his resignation.

For the foregoing reasons the findings and order granting a peremptory writ of mandate are modified as indicated; as so modified the order is affirmed, respondent to recover his costs on this appeal.

Peters, P. J., and Ogden, J. pro tem., concurred.

A petition for a rehearing was denied January 4, 1946, and the opinion and judgment were modified to read as above.