[Civ. No. 14441. First Dist., Div. One. Feb. 5, 1951.]

W. D. KENNEY et al., Respondents, v. HARRY K. WOLFF et al., Appellants.

Dion R. Holm, City Attorney, and Bernard J. Ward, Deputy City Attorney, for Appellants.

Charles Becker for Respondent.

PETERS, P. J.—This action for a "writ of mandate, injunction and declaratory relief" involves certain of the seniority rights of over 175 specified employees of the city and county of San Francisco who were formerly employees of the Market Street Railway Company, and who were "blanketed-in" to employment with the city by virtue of section 125 of the city charter when the private company was acquired by the city on September 29, 1944. The action has had a somewhat involved history. The original complaint, containing five causes of action, was filed March 6, 1946, and, after answer filed, the action came on for trial in June of 1946. During the trial the attention of the court was called to the case of *Mullins* v. *Henderson*, 75 Cal.App.2d 117 [170 P.2d 118], then on appeal to this court. It was believed by all involved that the Mullins case involved certain of the issues then before the trial court in the instant case. By stipulation, these points were withdrawn from consideration pending the

decision in the Mullins case, and the trial continued to judgment on the remainder of the issues not within the stipulation. The judgment on those retained issues was in favor of the plaintiffs and was affirmed on appeal by Division Two of this court in *Kenney* v. *Wolff*, 84 Cal.App.2d 592 [191 P.2d 88].

On February 17, 1947, the hearing of the reserved issues was resumed before the same judge who had heard the first part of this action. These reserved issues are those set forth in the complaint as the fourth cause of action, and subparagraph 4 of the fifth cause of action. These portions of the pleadings allege, substantially, that the defendants, unless restrained, will, in violation of section 125 of the charter, subordinate the plaintiffs to persons who were in the employment of the city prior to the acquisition of the Market Street Railway in all matters relating to discharges, layoffs, seniority, reemployment, promotional examinations and assignment of positions. These points were not discussed in the majority opinion in the Mullins case as had been anticipated, but were discussed in the concurring opinion in that case.

After a trial of the instant case, the court ordered judgment for plaintiffs and made and entered its findings. On motion for a new trial the parties stipulated that the motion should be denied upon the revision of certain of the findings. The court thereupon made supplemental findings in lieu of the original ones pursuant to the stipulation, and entered its judgment in favor of plaintiffs. This judgment provides:

1. That the defendants are prohibited by section 125 of the charter from subordinating plaintiffs to persons who were in the employment of the city prior to September 29, 1944, in matters relating to discharges, layoffs, reemployment, promotional examinations, credit for length of service, and assignment of positions, if length of service is a factor in such assignment.

2. In connection with such matters the plaintiffs are entitled to seniority rights from the dates of their original employment with the Market Street Railway Company. The precise date that each plaintiff was hired by the Market Street Railway Company is set forth in the judgment.

3. A peremptory writ of mandate was ordered to compel defendants to give plaintiffs credit in such matters.

Defendants appeal from the judgment.

On this appeal the sole question presented is the proper interpretation of that portion of section 125 of the charter which provides: ". . . All persons employed in the operating

service of any public utility hereafter acquired by the city and county at the time the same is taken over by the city and county, and who shall have been so employed for at least one year prior to the date of such acquisition, shall be continued in their respective positions and shall be deemed appointed to such positions, under, and entitled to all the benefits of, the civil service provisions of this charter; provided, however, that no person who is not a citizen of the United States shall be so continued in or appointed to his position. . . .''

Defendants take the position that the meaning of this section is that the former Market Street Railway employees are deemed to have entered the service of the city for seniority purposes, on September 29, 1944, the date of the consolidation, and are to get no credit for service prior to such date.

Plaintiffs take the position that this section means that said former Market Street Railway employees are to be given credit, in matters involving length of service, for their employment in the private company prior to September 29, 1944. The trial court concurred with this view.

The facts need not be recounted at length. It is sufficient to state that all of the plaintiffs are American citizens, and were employed by the Market Street Railway Company for more than one year prior to its acquisition by the city on September 29, 1944, and, as such, pursuant to section 125 of the charter above quoted, were ''blanketed-in'' to employment with the city. The evidence shows, and the city admits, that as to those matters involving seniority rights and credit for prior service the city has treated and will continue to treat, unless restrained, these plaintiffs as having served only from September 29, 1944, the date of the consolidation. No credit for service with the Market Street Railway Company is allowed. This applies to matters relating to discharges, layoffs, reemployment, credits on promotional examinations, credits for length of service and credits in connection with assignment of positions where length of service is a factor in such assignments. As to other employees of the city, credits are allowed from the date of their employment with the city.

This is by no means the first time that this charter provision has been before the courts for interpretation. The first case was *Handlon* v. *Wolff*, 72 Cal.App.2d 53 [164 P.2d 46]. In that case it appeared that Handlon had been the chief claims agent for the Market Street Railway Company for some 30 years prior to the consolidation. He was ''blanketed-in'' to

the city service by virtue of section 125. The precise question presented was what position he should be given in the city system. This court held that a proper construction of section 125 required that Handlon be given the same position, or one similar to it, in the city service that he had occupied with the private company. We further held that the civil service commission had violated section 125 of the charter by assigning Handlon to the position of ordinary claims adjuster. This case did not involve, and therefore did not decide, the question as to when these "blanketed-in" employees are to be deemed appointed for purposes of seniority, which is the point now involved, but it does contain some language that is pertinent on that point. In the present case the defendants place some reliance on certain rules of the commission specifying September 29, 1944, as the date the "blanketed-in" employees shall be deemed appointed for certain purposes of seniority, and the defendants point out that the rules of the commission, properly adopted, have the same force and effect as a charter provision. (*Mitchell* v. *McKevitt*, 128 Cal.App. 458, 461 [17 P.2d 789].) In reference to a similar argument made in the Handlon case the court stated (p. 59): "If Handlon had a right to the position of claims agent it was beyond the power of the commission to take that right away."

In the present case, if the plaintiffs had a right to be deemed appointed to the city service as of the date they joined the private company, the commission had no power to take that right away by rule. ". . . it is a fundamental principle of municipal law that the rule-making power vested by a city charter in a municipal agency must be exercised in conformity with all charter provisions, and that any rule adopted by such agency which has the effect of opening the way to circumvent or nullify charter provisions is, to that extent, inoperative and void." (*Ballf* v. *Civil Service Commission*, 43 Cal.App.2d 211, 215 [110 P.2d 478]; see, also, *Kenney* v. *Wolff*, 84 Cal.App.2d 592 [191 P.2d 88].)

Also in the Handlon case, this court, in discussing the effect that the commission's interpretation of section 125 of the charter would have on Handlon when and if he took a promotional examination, stated (p. 58): ". . . under the terms of the examination 100 points out of a total attainable 1,000 would be lost to Handlon because he had not been previously an employee of the city and county." In our case, if we adopt the interpretation of the defendants, the plaintiffs will lose 50 points in all examinations where service prior to

September 29, 1944, is involved. Thus, the Handlon case, while it does not compel, it does suggest the construction given to section 125 by the trial court in the instant case.

Another case where section 125 has been interpreted is *Mullins* v. *Henderson,* 75 Cal.App.2d 117 [170 P.2d 118], also written by this court. In that case there was involved the validity of certain proclamations made by the mayor of San Francisco under the emergency powers of section 25 of the charter. By those proclamations the mayor, during the war emergency and because of the threat of the Market Street employees to quit if they were paid only beginner's pay upon the consolidation, gave to the ex-employees of the Market Street Railway Company who were "blanketed-in" to the city service under section 125 of the charter, certain seniority rights in determining runs and compensation, "that is to say, that service with the Market Street company should be deemed service with the city in determining runs and compensation under the compensation fixed for like service with the city." (P. 121.)

The majority of the court upheld the proclamations as a proper exercise of the mayor's emergency powers. I wrote a concurring opinion in which it was held that it was not necessary to pass on the validity of the mayor's proclamations because the provisions of the proclamations were already compelled by a proper interpretation of section 125. ▮ In this connection the concurring opinion states (p. 136) : "There can be no doubt at all that under this section [125] the Market Street operating personnel had a charter right to be blanketed into civil service. But the charter does not merely give these employees the right to be employed as beginners. It provides that they shall be 'continued in their respective positions' and 'shall be deemed appointed to such positions' and entitled to 'all the benefits' of civil service. That language clearly and without ambiguity provides that the positions these employees had with Market Street shall be continued, and that in such positions such employees shall be entitled to the civil service rights attaching to those positions. The charter itself gives the employees this right without the necessity of further action by the mayor, the board of supervisors, or the civil service commission. The charter guarantee is to a position substantially similar in kind and degree to the one held by them under Market Street. The language quoted is capable of no other reasonable construction."

After quoting from and discussing *Handlon* v. *Wolff, supra,* the concurring opinion continues (p. 137) : "It seems too clear to require extended argument that an employee with important seniority rights attaching to his position with Market Street is not 'continued' in his 'respective' position, nor in the words of the Handlon case, has he been appointed to 'a similar position in kind or degree—one that in salary, authority, duties, etc., is reasonably comparable to the employee's former position,' if after working for Market Street for many years he is offered a beginner's job with no seniority benefits with the city, and at beginner's pay. Such a holding would mean that the Market Street employee would not be given substantially the same position with the city that he had with Market Street, but would be offered a position substantially, materially and realistically lower in rank."

While this language is contained in a concurring opinion, and therefore does not constitute a binding precedent, if it contains a correct interpretation of section 125, it fully supports the interpretation given the section by the trial court in the instant case. My associates who were on the court when the Mullins case was decided did not disagree with the interpretation contained in the concurring opinion, they simply believed that it was not necessary to base the opinion on section 125 in view of the emergency powers conferred upon the mayor by section 25 of the charter. My present associates agree with the interpretation given section 125 in the concurring opinion of the Mullins case. That is practically decisive of the issues raised on this appeal.

Defendants, in opposition to this construction, contend that to so construe the section is to give it retroactive effect in that such construction gives to the old Market Street employees rights, privileges, and credits based upon their service with Market Street that they never enjoyed prior to the date of the consolidation. This contention is based on the testimony of Ryan, president of a city employes' association, that Market Street had no fixed point system as does the city under civil service in reference to promotions. He did testify, however, that the Market Street Railway Company, while it had no rigid point system in reference to promotions, always did take seniority of employees into account in such matters. Upon the consolidation of a private with a city-operated utility, it is not to be expected that the rules applicable to seniority rights in the two companies would be identical. If, as we believe, section 125 was intended simply to preserve to old em-

ployees of the Market Street Railway Company the benefits of their long service with the private utility, and to bring such employees into the city service on a parity with existing employees of the city, the fact that the section may, in some respects, have a retrospective effect does not affect its validity. ■ A retrospective law is not necessarily invalid. "Neither the federal Constitution nor the Constitution of California prohibit the enactment of retrospective laws. (5 Cal.Jur. 747, § 142.) In California a statute is not invalid merely because it is intended to operate retrospectively. It may, however, be invalid if it deprives one of vested rights which are bound to be respected or protected by the state, or if it impairs the obligations of a contract. (5 Cal.Jur. 748, § 143.)'' (*American States W. S. Co.* v. *Johnson*, 31 Cal.App.2d 606, 613 [88 P.2d 770].)

Defendants, in further support of their position, refer to several general rules of statutory construction, and contend that these support their proposed interpretation. Some of these rules were relied upon in the Mullins case, *supra,* and the concurring opinion at least found that they did not compel the result now urged. These rules need not be considered *seriatim* nor need we give detailed consideration to the interpretation of single words given in other cases involving a different statute and used in a context different than is used here. We are interested in ascertaining the intent of the people in adopting section 125 of the charter, as such intent is disclosed by the words used in the section. General rules of construction are at best but a very general guide to be used in attempting to ascertain that intent. Many of these rules conflict with or are inconsistent with each other. A different interpretation can be reached frequently, and in this case in particular, dependent upon which general rule is emphasized. Some of the suggested rules of construction support defendants' interpretation—some support the construction given the section by the trial court in the instant case, and the construction given the section in the concurring opinion in the Mullins case. We are interested in ascertaining intent, and in ascertaining that intention we should strive for a construction that is reasonable and fair. If, as was said in the concurring opinion in the Mullins case, the purpose and effect of section 125 was to provide that Market Street employees should be "continued in their respective positions" upon the consolidation, and if, as was also there stated "The charter guar-

antee is to a position substantially similar in kind and degree to the one held by them under Market Street" (*Mullins* v. *Henderson,* 75 Cal.App.2d 117, 137 [170 P.2d 118]), there can be no escape from the conclusion that seniority rights of the Market Street employees must be protected. Not only is that a technical and correct interpretation of the word "continued," but, considering the purpose, intent, spirit, and background of the statute, it is a fair and reasonable interpretation.

Defendants, as they did in the Mullins case, express some fear that, in connection with retirement, such an interpretation will result in the "blanketed-in" employees claiming that they are entitled to retirement credits for past services with Market Street, so that the city will have to make large contributions to the retirement fund. There are enough points involved in the present appeal without considering points that are not involved. In response to the identical contention made in the Mullins case, the concurring opinion states (p. 137): "Appellant contends that such a construction would mean that the Market Street employees would be entitled to the retirement benefits provided for city and county employees. That conclusion by no means follows. The retirement system is a contributive one. The Market Street employees have not contributed for the period they were working for Market Street. Retirement benefits are not civil service benefits *per se*. They are the result of a special charter enabling provision, and statutes passed pursuant thereto. They have no relation to the 'kind' or 'degree' of position involved."

When and if the point is presented it will be decided. While the result that will follow from a particular construction of a statute is certainly a factor to be considered in interpreting it, a fancied result that involves different factors and principles should not be given much weight.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.