[Civ. No. 18036. Second Dist., Div. One. July 30, 1951.]

IVY TEDDER, Appellant, v. OTTO JOHNSON et al.,
Respondents.

Denio, Hart, Taubman & Simpson and George A. Hart for Appellant.

Clifton A. Hix for Respondents.

WHITE, P. J.—This is an appeal by plaintiff from an adverse judgment in an action brought by her to quiet title to certain real property, by which judgment title to a one-half interest was quieted in defendants and cross-complainants, whose claim was based upon a sale under execution, issued pursuant to a judgment against the husband of plaintiff. At the time of the institution of the action against plaintiff's husband and the levy of an attachment against the property it stood of record in the names of plaintiff and her husband as joint tenants.

It is appellant's contention that the judgment is wholly without support in the evidence. It is argued that the evidence indisputably shows that the funds used to purchase the property in question came solely from the earnings and separate estate of appellant, and that such funds were not liable for the debts of her husband. Section 168 of the Civil Code provides as follows: "The earnings of the wife are not liable for the debts of the husband; but, except as otherwise provided by law, such earnings shall be liable for the payment of debts, heretofore or hereafter contracted by the husband or wife for the necessities of life furnished to them or either of them while they are living together." Concededly, the

debt which led to the execution sale here attacked was not a debt for the necessities of life furnished the wife or husband.

■ Epitomizing the facts, as shown by the record, it appears that Ivy Tedder (appellant herein) and R. G. Stanley were married in Texas in December, 1939, at which time appellant was employed, had an automobile and approximately $1,000 in bonds and cash. In August, 1940, she received a gift of $400 from her brother. Stanley and appellant lived together as husband and wife in Texas until June, 1943, when they came to California and continued to live together in this state as husband and wife. Appellant spent her $1,000 for furniture which she has retained. After coming to California appellant worked at various occupations and her husband engaged in the building contracting business. In addition to the property here in question, appellant and her husband owned the home in which they lived, which was also purchased as husband and wife, in joint tenancy. In November, 1943, appellant and her husband entered into a contract to purchase as joint tenants four lots, constituting the real estate which is the subject of this action. On February 2, 1945, the contract was paid in full and in April, 1945, a deed was delivered and recorded conveying the property to appellant and her husband as joint tenants.

In February, 1946, respondents herein brought an action against appellant's husband, R. G. Stanley, based upon his failure to complete a contract to build a home for respondents. A writ of attachment was issued against the aforesaid property on February 20, 1946, and on February 24, 1946, appellant's husband conveyed his interest in the lots to appellant. In March or April, 1947, respondents recovered judgment against appellant's husband, caused execution to be levied, and the property sold to respondents in June, 1947. The present action by appellant to quiet title was brought in July, 1949.

Appellant argues that the record "is full and complete" to the effect that the entire consideration for the property involved came from her earnings and the money she received from her brother, and that there was no evidence introduced by respondents to the contrary. In this respect reliance is placed upon the testimony of appellant that she made the installment payments on the contract out of her earnings and made the final payment of $318.85 out of the funds which had been given to her by her brother when he went overseas in 1940. Appellant further testified that her husband never

supported her, and that in 1942, they "made an agreement that I would keep all my earnings and he would keep all his earnings for our own separate property."

It is noteworthy in connection with the discussion hereinafter to be had, as respondents point out in their brief, that on February 17, 1946 (before the writ of attachment was issued), respondent Lela Johnson called upon Mrs. Stanley in Mr. and Mrs. Stanley's home, "to try to see Mr. Stanley and find out why he didn't complete his job building a home for the Johnsons, or do some work on it, and tried to find out from Mrs. Stanley what had become of the $1,382.80 that the Johnsons had given to Mr. Stanley for him to start the construction of the home for which he had been employed. Mrs. Stanley was familiar enough with the work that Mr. Stanley was doing that she got some bills and showed them to Mrs. Johnson that Mr. Stanley had paid for materials to be used on the Johnsons' house and Mrs. Johnson informed Mrs. Stanley that she was going to sue Mr. Stanley for the return of her money, and Mrs. Johnson at that time also informed Mrs. Stanley that she was going to run an attachment on the lots. . . . The Johnsons then did sue Mr. Stanley on the 18th day of February, 1946, the day following the conversation between Mrs. Johnson and Mrs. Stanley. The four lots, the subject of this action, were attached on February 20, 1946. . . . Apparently no claim was made by Mrs. Stanley adverse to the title the Johnsons had acquired, nor to the validity of the record title so far as R. G. Stanley (her husband) was concerned, and apparently she permitted the Johnsons to proceed with the execution sale and purchase the interest of R. G. Stanley for the full amount of the judgment, and apparently did nothing to assert her claim of ownership and claim that the property was her separate property until she filed the present action on July 18, 1949."

Despite the fact that in many respects the testimony of appellant stands without any direct contradiction in the record, it cannot be held on appeal that the findings are without support in the evidence or that the judgment is against law. It was the province of the trial court to resolve conflicting evidence and conflicting inferences which might be drawn therefrom, and its conclusion will not be disturbed on appeal if some substantial evidence or reasonable inference lends support thereto. (See *Nichols* v. *Mitchell,* 32 Cal.2d 598, 606

[197 P.2d 550] ; *Hicks* v. *Reis*, 21 Cal.2d 654, 659, 660 [134 P. 2d 788].) The power of this court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the findings, and when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]).

The record herein discloses that the property was taken by husband and wife as joint tenants. The exemption of the wife's earnings under section 168 of the Civil Code may be waived and is waived where such earnings are so mingled with community property as to lose their identity (*Truelsen* v. *Nelson*, 42 Cal.App.2d 750, 754 [109 P.2d 996] ; *Pfunder* v. *Goodwin*, 83 Cal.App. 551 [257 P. 119]). In *Truelsen* v. *Nelson, supra,* it is said : ''It is well settled in this state that where separate and community property are so commingled that they cannot be traced and the identity of each has been lost, the whole will be treated as community property since the burden is upon the party claiming that the property is separate to establish that fact. *Fountain* v. *Maxim,* 210 Cal. 48 [290 P. 576] ; *Estate of Fellows,* 106 Cal.App. 681 [289 P. 887].) And where separate and community property is thus mingled a wife may not thereafter claim an exemption as to a sum which equals the amount of her earnings which she has theretofore placed in the common fund. (*Street* v. *Bartolone,* 193 Cal. 751 [226 P. 913].)''

 Much of the assertedly undisputed testimony of appellant was self-serving and replete with her conclusions as to the legal effect of her alleged arrangements with her husband. The factual problem was not simplified by the absence of documentary evidence as to bank accounts or payments by check, the appellant testifying that after arriving in California she kept her funds on her person. Moreover, her version of their arrangements was inconsistent with the fact that not only the real estate in question, but the home occupied by her and her husband before their separation had been held in joint tenancy until some time in 1945. The trial court was entitled to draw conclusions from the fact that the property here in question remained in joint tenancy until after it was attached. Further, with reference to the function of the trier of fact in the situation presented and the credence to be accorded the testimony of appellant, the language of the

court in *Nichols* v. *Mitchell, supra,* 32 Cal.2d 598, 605, 606, is here applicable:

"Section 164 of the Civil Code provides, in part, that 'whenever any real or personal property . . . is acquired by a married woman by an instrument in writing, the presumption is that the same is her separate property.' However, 'such presumption is a disputable one, in the form of evidence, and may be controverted by other evidence, direct or indirect (*Stafford* v. *Martinoni,* 192 Cal. 724 [221 P. 919]) ; and whether or not it is so controverted is a question of fact for the trial court, its conclusions, unless manifestly without sufficient support in the evidence, being conclusive on appeal.' . . . (Citing cases.)

"Defendants argue that no evidence was introduced to dispel the presumption raised by section 164 of the Civil Code and to establish the community character of the property standing in the name of Mrs. Mitchell. To this end they cite their 'uncontradicted testimony' that the purchase was made upon Mrs. Mitchell's delivery of her securities and the proceeds of a loan negotiated by her as her independent obligation. . . . But the trial court was not concluded by defendants' testimony as to the source of the consideration for the purchase of the property. It was entitled to consider the situation of the parties at the time of the purchase in 1937, the circumstances that may have occasioned the placing of the title in Mrs. Mitchell's name, and the legitimate inferences arising therefrom which precipitated into essential conflict the issue as to the separate or community character of the property. This province of the trial court to resolve 'conflicting evidence or conflicting inferences' and to reach a conclusion that will not be disturbed 'on appeal if some substantial evidence or reasonable inference' lends support thereto (*Security-First National Bank* v. *Bruder,* 44 Cal.App.2d 767, 772 [113 P.2d 3]) was forcefully declared in the recent case of *Hicks* v. *Reis,* 21 Cal.2d 654, at pages 659, 660 [134 P.2d 788] ; '*The trier of the facts is the exclusive judge of the credibility of the witnesses.* (Code Civ. Proc., § 1847.) While this same section declares that a witness is presumed to speak the truth, it also declares that "This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony . . . or his motives, or by contradictory evidence." In addition, in passing on credibility, the trier of the facts is entitled to take into consideration the interest of the witness in the result of the case. (Citing authority.)

*Provided the trier of the facts does not act arbitrarily, he may reject in toto the testimony of a witness, even though the witness is uncontradicted.* (Citing cases.) . . . (as) the court, in *Market Street Ry. Co.* v. *George,* 116 Cal.App. 572, 576 [3 P.2d 41], stated: "It has always been the rule that courts and juries are not bound by mere swearing no matter how positive, unless it is credible swearing. It may bear within itself the seeds of its own destruction, as where it is inherently improbable, or its destruction may be wrought from without, as where the person swearing is in some manner impeached. In either case court and jury are entitled to disbelieve the testimony if they choose, and if they do refuse it credence it is of no more effect than if it had not been given. It disappears from the case and the inference opposed to it is no longer contradicted." ' (Emphasis added.) "

So in the instant case, while the evidence might be held to have supported findings in favor of appellant, this court is without power to disturb findings adverse to her which are founded upon substantial evidence or upon reasonable inferences from the evidence. This is particularly true in the instant case, when the testimony is reviewed in the light of section 1847 of the Code of Civil Procedure and the holding of the court in *Nichols* v. *Mitchell, supra* (pp. 605, 606).

The judgment is affirmed.

Drapeau, J., and Hanson, J. pro tem., concurred.