[Civ. No. 51134. Second Dist., Div. Four. Feb. 2, 1978.]

GERALD L. ROBERTSON, Plaintiff and Respondent, v.
FRANCES WILLIS, Defendant and Appellant.

## COUNSEL

Cooney & Cooney and Lee Fineman for Defendant and Appellant.

Harry E. Barnes for Plaintiff and Respondent.

## OPINION

WIENER, J.*—Frances Willis (Frances) appeals from a judgment against her in the principal sum of $4,750, plus attorneys' fees of $1,500 and costs of suit and appeal. She contends that, although a business debt incurred during marriage by her husband may be satisfied from community property, this does not warrant her personal liability under the facts of this case. We agree.

The questions to be decided on appeal are: (1) whether the fact that community property stands in the name of one spouse only is in itself sufficient reason to create personal liability for that spouse, and (2) whether Civil Code section 5116, effective January 1, 1975, can be applied retroactively.

At the time of appellant's marriage to John Willis (John) in July of 1951, she had been employed as a teacher for approximately 19 years. She continued to be so employed until her retirement in 1975. Her husband worked with varying degrees of success in the painting and decorating business for about 22 years before their marriage and after, continuing up until his death on October 10, 1974.

On April 22, 1970, he entered into a written agreement with plaintiff for the purpose of conducting business as partners under the firm name of John R. Willis Painting and Decorating for which the plaintiff paid him $5,000. Shortly thereafter, the parties decided to terminate their short-lived venture by John returning that sum to the plaintiff. This obligation was reflected in a promissory note dated September 10, 1970, signed by John Willis. It is this business transaction and the promissory note which form the basis of the present litigation.

Plaintiff's original complaint, against John only, contained four causes of action, including a cause of action based on the unpaid balance of the

---

*Assigned by the Chairperson of the Judicial Council.

promissory note in the sum of $4,750. Thereafter, his first amended complaint was filed which added appellant as a defendant and which contained an additional allegation of a conspiracy between her and her husband to defraud and mislead creditors, including the plaintiff. Plaintiff appealed from a summary judgment entered in favor of Frances. This court reversed the judgment on the authority of *Shinn* v. *Macpherson* (1881) 58 Cal. 596 and *Demetris* v. *Demetris* (1954) 125 Cal.App.2d 440 [270 P.2d 891]. (*Robertson* v. *Willis*, unpub. opn. filed May 2, 1973.)

The practice of the parties during their entire marriage was that each maintained a separate checking account into which each deposited his or her earnings and from which each paid certain household bills. Although each could sign checks on the other's account this was not the typical procedure. There were no joint accounts. Expenses relating to John's business were apparently paid from his account. Prior to their marriage Frances had purchased a residence in her name only which was used during marriage as the family home, payments on which were made by her from her checking account. After their marriage she acquired another house, certain stocks and cash in checking and savings accounts, all of which were in her name only acquired from her earnings deposited into her separate account. Admittedly, the handling of their family finances may not have been typical of many working couples, but the trial court expressly found as a fact that there was no evidence of a conspiracy between Frances and her now deceased husband to defraud the plaintiff. Their practice did, however, result in Frances, at the time of her husband's death, having substantially more of the community property in her name than in her husband's name. It is this result which caused the trial court to conclude that Frances was unjustly enriched. She has never contended that the property standing in her name only which was acquired from community sources was her separate property and exempt from execution arising from a judgment against her husband. (Cf. *Hansford* v. *Lassar* (1975) 53 Cal.App.3d 364 [125 Cal.Rptr. 804].) Rather, she concedes that neither she nor her husband did anything whatsoever to attempt to change the amount of community property liable for her husband's obligations.

■ Community property is available to satisfy a husband's debts to his creditors. (*Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557 [63 Cal.Rptr. 13, 432 P.2d 709].) Whether the debts are incurred before or after marriage the community estate, including the interest of the wife, is subject to execution. (*Grolemund* v. *Cafferata* (1941) 17 Cal.2d 679 [111

P.2d 641].) Because the rights of a creditor may turn on the character of property, whether that property is separate or community is significant. (See 7 Witkin, Summary of Cal. Law (8th ed.) Community Property, § 82 et seq., p. 5170.)

All real property situated in this state and all personal property wherever situated acquired during the marriage by a married person while domiciled in this state is community property. (Civ. Code, § 5110.) ■ The character of property is not determined merely by whose name it is in, but by the time and method of its acquisition.

■ Even though there is a presumption that property acquired by a wife in writing is her separate property (Civ. Code, § 5110), this presumption is rebuttable and can be overcome by circumstantial evidence. (*Nichols* v. *Mitchell* (1948) 32 Cal.2d 598 [197 P.2d 550].)

It is only proper that the rights of a creditor should be increased to include the separate property of a wife if it can be traced to the fruits of her husband's fraud. (*Demetris* v. *Demetris, supra,* 125 Cal.App.2d 440.) In this case plaintiff did not trace any of the funds obtained from him to any item of property owned by Frances. There was also no conspiracy between Frances and her husband to defraud the plaintiff.

The trial court's conclusion that Frances was unjustly enriched was predicated upon the assumption that the net value of the community was reduced by their practice of handling their finances. There is no evidence that any creditor who would otherwise have had access to the community had lost that right and remained unpaid. No penalty should be affixed because a husband and wife may select a unique, but convenient and simple method of handling their personal affairs.

Plaintiff has not established that the net value of the community estate has in any way been diminished nor that the segregation of earnings and income deprived creditors of recourse to community assets.

It would be inappropriate for appellant to concede on appeal that the community property is liable for the postmarital debts of her husband, but whipsaw the plaintiff at the time of his levy on that property by contending that it is all exempt because its source is her earnings under pre-1975 Civil Code section 5117.[1] "[W]hen the earnings of the wife are

---

[1]Prior to its repeal Civil Code section 5117 read as follows: "The earnings and community property personal injury damages of the wife are not liable for the debts of

preserved separate and distinct from the rest of the community property, . . . they cannot be reached by the creditors of the husband regardless of whether the debts contracted with these creditors are community debts or separate debts of the husband." (*Street* v. *Bertolone* (1924) 193 Cal. 751, 754 [226 P. 913].) ■ The exemption available to the wife can be lost when her earnings have become commingled with other community property so as to lose their identity. (*Tedder* v. *Johnson* (1951) 105 Cal.App.2d 734, 738 [234 P.2d 149].) The trial court, in anticipation that the defendant would make the contention that all of the community property represented her uncommingled earnings only, made a finding that the transaction was governed by Civil Code section 5116,[2] effective January 1, 1975, even though the contract creating the debt was entered into before that date.

On October 1, 1973, the Dymally Bill[3] was signed into law, effective January 1, 1975. The new law made a fundamental change in the California community property system by giving to both spouses joint and several management and control of the community property after January 1, 1975. Because the legislation made no distinction as to pre- and post-1975 community property, it prompted comment on the constitutionality of its retroactive application. Was *Spreckels* v. *Spreckels* (1897) 116 Cal. 339 [48 P. 228] still alive? (See Bonanno, *The Constitution and "Liberated" Community Property in California—Some Constitutional Issues and Problems Under the Newly Enacted Dymally Bill* (1974) 1 Hastings Const. L.Q. 97; Reppy, *Retroactivity of the 1975 California Community Property Reforms* (1975) 48 So.Cal.L.Rev. 977.)

In order to avoid the many complex questions that are certain to arise when a statute is enacted to apply retroactively, the initial legislation involving Civil Code section 5116 (Stats. 1973, ch. 987, §§ 7, 20-21) provided that all community property would become liable only for debts contracted by either spouse on or after January 1, 1975. Prior to that date the general rule would continue that only property managed and controlled by the debtor spouse would be liable.

the husband; but, except as otherwise provided by law, such earnings and damages shall be liable for the payment of debts, heretofore or hereafter contracted by the husband or wife for the necessities of life furnished to them or either of them while they are living together. As used in this section, 'community property personal injury damages' has the meaning given that term by subdivision (b) of Section 4800."

[2]Civil Code section 5116 provides: "The property of the community is liable for the contracts of either spouse which are made after marriage and prior to or on or after January 1, 1975."

[3]The legislation was named after its principal author, State Senator Mervyn Dymally.

The legislation was amended after its enactment, but before its effective date, by a fourth act (Stats. 1974, ch. 1206, §§ 1-7) which was denoted a "trailer bill" and dealt with technical amendments including whether the legislation would apply retroactively. (See Bonanno, *supra,* p. 98, fn. 6.) The fourth act eliminated the prospectivity provision covering contract creditors and gave creditors retroactive rights. (Stats. 1974, ch. 1206, § 2.) The language of Civil Code section 5116, as amended, expressly provides that the community is liable for contracts of *either* spouse made either *before* or *after* January 1, 1975. The legislative motive appears clear, for to have done otherwise would have severely hampered the increased benefits available to women under the new legislation. Creditors would have been hesitant to extend credit if only post-1975 community property were available to satisfy newly created debt.

██ The only problem of interpretation relating to the intent of the Legislature as to the retroactive application of Civil Code section 5116 is section 7 of Statutes 1974, chapter 1206, which provided "This act shall not apply to or affect any act or transaction which occurred prior to January 1, 1975." In light of the language of the statute and the legislative policies set out in section 1 of the fourth act, section 7 is surprising.

██ When we are called upon to determine the meaning of a statute it must be given a fair and reasonable interpretation with due regard to the language used and the purpose sought to be accomplished. (See *County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 199 [195 P.2d 17].) ██ Section 7 of chapter 1206 can be interpreted reasonably to apply to the entire legislation and not merely the fourth act.

Section 7 is in direct conflict with section 2. When specific language conflicts with the general, the specific provisions will prevail. (See *Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505].) We construe that the legislative purpose of section 5116, consistent with its express language, is for retroactive application.

██ All retrospective legislation is not invalid merely because it operates as such. (See 5 Witkin, Summary of Cal. Law (8th ed.) Constitutional Law, § 282, p. 3571.) It will be invalid only if it deprives one of vested rights, which are bound to be respected or protected by the state, or if it impairs the obligations of contract. (See *Kenney* v. *Wolff* (1951) 102 Cal.App.2d 132, 139 [227 P.2d 285].)

■ In the area of creditor rights a statute which increases a debtor's exemption is unconstitutional as it applies to the claim of a creditor in existence prior to the law even though the creditor acquired no specific lien at such time. (See *In re Rauer's Collection Co.* (1948) 87 Cal.App.2d 248 [196 P.2d 803]; *Daylin Medical & Surgical Supply, Inc.* v. *Thomas* (1977) 69 Cal.App.3d Supp. 37 [138 Cal.Rptr. 878].)

A creditor presumably relies on property available to satisfy his obligation in light of exemption laws existing at the time of the extension of credit and any attempt to impair that right is violative of United States Constitution, article I, section 10. (See *W. B. Worthen Co.* v. *Thomas* (1934) 292 U.S. 426 [78 L.Ed. 1344, 54 S.Ct. 816]; *Medical Finance Assn.* v. *Wood* (1936) 20 Cal.App.2d Supp. 749 [63 P.2d 1219]; *Smith* v. *Hume* (1937) 29 Cal.App.2d Supp. 747, 749-750 [74 P.2d 566].)

We do not have a situation here where a contract creditor can complain about the effect of the elimination of the exemption of pre-1975 Civil Code section 5117. To the contrary, the elimination of the exemption inures to his benefit.

The only person that has status to complain is the spouse of the judgment debtor. She must contend that the elimination of her exemption has impaired the contractual relationship that she had with her husband. She would argue that, because she was well aware of her husband's spending habits, his inability to be prudent in his business dealings, the availability of the exemption attached to her earnings and to any community property traced to those earnings, she and her husband agreed to place their respective earnings in separate bank accounts and to accumulate property from her earnings only.

We do not have here the type of retroactive impact that exists in other situations when the word "retroactive" is used. There is no attempt to rescind a consummated transaction nor is there taking of property of one person and giving it to another. Although the judgment creditor may be said to receive a windfall by the elimination of the exemption, as between the spouses, one person is not getting property belonging to the other. (Cf. *Estate of Thornton* (1934) 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343].) During the marriage a husband retains a one half interest in the community property acquired through his wife's earnings. He has the right to convey that property by will and is entitled to one half of it upon dissolution of their marriage. The net worth of the community property at the time of dissolution, after the passage of the Family Law Act and

before January 1, 1975, was determined by including all community assets and obligations. The exemption available to a wife did not increase her net worth at the time of dissolution. It is questionable whether the wife's contractual relationship with her husband is materially altered by the retroactive legislation.

It is also questionable whether the type of commitment described is one which a wife could have reasonably relied upon and believed that the court would have enforced. After *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351], she should have been on notice that her husband might have successfully contended that the exemption available to her was a denial to him under the California Constitution of equal protection under the law, for there was no compelling state interest to require his wife's earnings to be exempt from community debts.

It would indeed be simple to resolve the issue of retroactivity by affixing the label of nonvested to the right of Frances in her exemption and on that basis conclude that, as a mere privilege, the exemption can be eliminated by retroactive legislation. (See, e.g., *Estate of Pillsbury* (1917) 175 Cal. 454 [166 P. 11, 3 A.L.R. 1396]; *In re Marriage of Silvers* (1972) 23 Cal.App.3d 910 [100 Cal.Rptr. 731].) Another easy approach is to conclude that, because the judgment in this case occurred after the effective date of the legislation, any levy pursuant to that judgment will be governed by the law in effect at the time of the levy. In *Addison* v. *Addison* (1965) 62 Cal.2d 558 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391], in which the quasi-community property legislation was declared constitutional, Justice Peters at page 569 stated: "Nor is the statute being applied retroactively. That is so because the legislation here involved neither creates nor alters rights except upon divorce or separate maintenance. The judgment of divorce was granted after the effective date of the legislation. Hence the statute is being applied prospectively." Using similar logic the rights that came into existence, i.e., the rights of a judgment creditor, occurred after the effective date of the legislation and are being applied prospectively.

Neither of these neat approaches, however, is in keeping with the more thoughtful discussion reflected in *Flournoy* v. *State of California* (1964) 230 Cal.App.2d 520 [41 Cal.Rptr. 190], citing Hochman, *The Supreme Court and The Constitutionality of Retroactive Legislation* (1960) 73 Harv.L.Rev. 692, in which analysis of the constitutional effect of retroactive legislation turns on a consideration of ". . . the nature and

strength of the public interest served by the statute, the extent to which the statute modifies or abrogates the asserted preenactment right, and the nature of the right which the statute alters." (Hochman, *supra*, at p. 697.) A balancing of interests is necessary.

We have previously pointed out that there is questionable reliance by a wife on the exemption available to her when the net value of her property, as between her and her husband, is not diminished by the elimination of the exemption.

The right of a wife which is impaired is also of doubtful social value. Although a lawful agreement to maximize benefits that flow from optimum use of the statutory scheme of exemptions has not been declared invalid as to creditors, it has been questioned. "There are some cases which indicate that one spouse will not be permitted to hide behind statutory rules of exemption from levy when he is reaping the fruits of the acts of the other spouse on which the action is based, especially if these fruits can be traced into the property levied on." (*Tinsley* v. *Bauer* (1954) 125 Cal.App.2d 714, 728-729 [271 P.2d 110].) There can be little doubt but that the manner of handling their personal finances as illustrated in this case allowed Frances to channel her earnings to accumulate property for both spouses to share and enjoy while insulating that property from creditors. The inequitable result that follows from that practice may not be equivalent to unjust enrichment causing her to be personally liable, but it is the type of right that can be impaired by legislation.

In examining the nature and strength of the policy interest served by the statute, it is helpful to consider the importance of the social policies underlying the new enactment and the extent to which retroactivity is necessary to achieve the Legislature's social policies. (See Reppy, *supra*, at p. 1048.)

The Legislature expressed itself on these matters by declaring in section I that "the extension of the right to manage and control all of the community property of a marriage to both spouses entails important social and economic considerations" and "the extension of the liability of community property avoids undesirable preferences among creditors of the community." It further declared that the right of management and control extending to community property acquired either before or after January 1, 1975, was ". . . necessary to achieve social and economic equality and facilitate commercial transactions."

If the legislation were prospective only the additional problems encountered by creditors become apparent. At the time of a levy not only would the source of the community property become relevant, but also the date of its acquisition. If the property had appreciated after its acquisition that portion attributable to nonexempt earnings only would be available to satisfy the levy. Respective valuations of the property on the date of its acquisition, on January 1, 1975, and on the date of the levy, would be required. Innumerable other difficulties both for the creditor and the debtors can be hypothesized. If the legislation were to operate in a retroactive fashion, uniform treatment to creditors becomes available.

Paramount stress must be given to the underlying purpose of the legislation. To treat the spouses equally is of utmost and vital social concern consistent with the realities of society. The Legislature recognized that to perpetuate discrimination along sexual lines was senseless and arbitrary. We agree.

■ When a balancing process is used to compare the interest of a wife in her exempt earnings with the basic purpose of Civil Code section 5116, we find the legislation is valid. There is no infringement of a constitutional right when a wife's earnings become available for community debts incurred prior to January 1, 1975.

The trial court correctly concluded that the community property of the parties, including that accumulated from Frances' earnings, is liable for payment of the promissory note executed by John in favor of the plaintiff. However, insofar as the judgment is a personal judgment against Frances, it is erroneous. The error may be corrected by modification of the judgment. (See *Dyer* v. *Minturn* (1920) 47 Cal.App. 1 [189 P. 1046], 7; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 539, p. 4481.)

The judgment is modified by adding thereto the following provision: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the liability of defendant Frances Willis is limited to the extent of her interest in the community property owned by her and John Willis." As thus modified, the judgment is affirmed. Respondent shall recover his costs on appeal.

Kingsley, Acting P. J., concurred.

**JEFFERSON (Bernard), J.**—I concur in part and dissent in part.

I agree with the majority that the trial court's rendition of a personal judgment against defendant was invalid. I agree that the judgment against defendant must be limited to a judgment which imposes liability against the community property of defendant and her deceased husband. I disagree with the view of the majority that Civil Code section 5116, which became effective January 1, 1975, can be applied retroactively so as to permit plaintiff to collect the judgment by levying execution against the community property interest of defendant which has as its source defendant's earnings obtained during the course of the marriage.

In my view the retroactive application of Civil Code section 5116 to the community earnings of defendant constitutes a violation of the due process and equal protection rights of defendant under both the federal and state Constitutions.

At the time that plaintiff became a creditor of defendant's husband, the earnings of defendant, though community property, were exempt from execution by virtue of Civil Code section 5117. That section provided in pertinent part that "[t]he earnings and community property personal injury damages of the wife are not liable for the debts of the husband; . . ." Section 5117 was repealed in 1974. (Stats. 1974, ch. 1206, § 3, p. 2609.) Civil Code section 5116, as amended and made effective January 1, 1975, provided that "[t]he property of the community is liable for the contracts of either spouse which are made after marriage *and prior to* or on or after January 1, 1975." (Italics added.)

The earnings of defendant, accumulated after the marriage and prior to the repeal of Civil Code section 5117 in 1974, were free from liability for the debt of the husband to his creditor, the plaintiff, which was converted into a judgment against defendant in the instant case.

I cannot accept the majority's view that the legislative actions—the repeal of Civil Code section 5117 and the enactment of the retroactive provisions of section 5116—which subjected the defendant's community earnings to the husband's debt involved in the case at bench, are constitutionally permissible. It is true that in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371], the court remarked that "[r]etroactive legislation, though frequently disfavored, is not absolutely proscribed. The vesting of property rights, consequently, does not render them immutable." (Fns. omitted.)

In *Addison* v. *Addison* (1965) 62 Cal.2d 558 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391], our Supreme Court upheld as constitutional and not a violation of due process rights, the application of California's quasi-community property legislation to property acquired before the effective date of the legislation, even though such application clearly impaired a husband's vested property rights. In *Addison,* the court concluded that the retroactive application of that legislation was a proper exercise of the police power. In explaining *Addison,* the Supreme Court in *Marriage of Bouquet,* stated: "The state's paramount interest in the equitable distribution of marital property upon dissolution of the marriage . . . justified the impairment of the husband's vested property rights." (*In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 593.) In the *In re Marriage of Bouquet* case itself, the Supreme Court upheld the retroactive application of Civil Code section 5118, which changed the status of a husband's earnings after separation from the previous status of community property to his separate property, thus placing the earnings of both spouses upon separation on the same basis.

The major emphasis in *Addison* and *In re Marriage of Bouquet* was placed upon the fact that the retroactive legislation developed from an appreciation of the rank injustice of the former law. In *Addison* the retroactive legislation resulted in a divestiture of the husband's property rights, while in *Marriage of Bouquet* such legislation caused a divestiture of the wife's property rights. "The state's interest in the equitable dissolution of the marital relationship supports this use of the police power to abrogate rights in marital property that derived from the patently unfair former law." (*In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 594.)

The compelling reasons for upholding the validity of the retroactive legislation dealt with in *Addison* and *In re Marriage of Bouquet* are not present in the case at bench. The majority points out that the retroactive application of Civil Code section 5116 to defendant's community earnings does not change the character of her property or deprive the defendant wife of any interest in the property as between her and her husband. This is an irrelevant consideration.

We are here concerned with the rights to a species of community property—the wife's earnings—as between the husband's creditor and the defendant wife. The principle set forth in *Addison* and *In re Marriage of Bouquet* that the state has a paramount interest in the equitable dissolution of the marital relationship which permits the Legislature to

abrogate rights in marital property that derive from manifestly unfair former legislative law cannot be applied in the instant case to justify giving the husband's creditor a right to a wife's community earnings when he bargained solely with the husband in becoming the husband's creditor with full knowledge that by reason of Civil Code section 5117, he would be unable to reach the wife's community earnings to satisfy the husband's debt.

In *In re Marriage of Bouquet,* the Supreme Court set forth the following as the guiding principles for making a determination of whether a retroactive law contravenes a party's due process rights. The court said: "In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 592.)

By applying these principles set forth in *Marriage of Bouquet,* the conclusion is compelling that Civil Code section 5116, by its retroactive application to defendant in the instant case, constitutes a clear violation of defendant's constitutional due process rights.

I consider first the factors of (1) "the significance of the state interest served by the law," and (2) "the importance of the retroactive application of the law to the effectuation of that interest." I see absolutely no legitimate state interest that is served by the retroactive application of Civil Code section 5116. This legislation simply gives a husband's creditor a windfall which he does not deserve. I do not consider that it is a legitimate state interest for the Legislature to look around for property to give to a creditor for payment of a husband's debt when the creditor had no potential or expectation of realizing collection from such a source when he became a creditor of the husband.

If the courts are willing to say that it is a legitimate state interest to enlarge the sources of property from which creditors may collect their debts, irrespective of their expectations, the only way such a state interest may be advanced fairly would be through legislation which would eliminate all exemptions from execution. I am unable to see any legitimate state interest which leaves all other exemptions intact from

retroactive legislation but takes away from the wife, retroactively, the exemption of her community property earnings. In addition to the due process violation, I consider that the retroactive application of Civil Code section 5116 to the defendant wife in the case before us constitutes a denial to her of her constitutional right to equal protection of the laws.

I consider next the factors of (1) "the extent of reliance upon the former law," (2) "the legitimacy of that reliance," (3) "the extent of actions taken on the basis of that reliance," and (4) "the extent to which the retroactive application of the new law would disrupt those actions." A consideration of this second set of factors set forth in *In re Marriage of Bouquet* leads me to conclude that these factors are present to a substantial degree and constitute weighty considerations to support the conclusion that the retroactive application of Civil Code section 5116 constitutes a denial to defendant of her constitutional due process and equal protection rights.

Here we have a situation in which the defendant wife sought to protect herself by keeping her community earnings separate and apart from the earnings of her husband with the realization that if she did *not* do so, the husband's business ventures and debt-creating activities might well result in the loss and evaporation of all of their joint accumulations. This is a legitimate reliance by the defendant upon the provisions of Civil Code section 5117—seeking to protect a portion of her community property interests against the debt-making actions of a possible profligate husband.

It is the essence of unfairness for the courts to condone legislative action which has the effect of stating that a wife's reliance upon the exemption laws set forth in Civil Code section 5117 and her efforts to obtain some security are null and void because, as between her interests and that of her husband's creditor, the Legislature deems the creditor's interest paramount. Civil Code section 5116 makes the creditor's interest paramount even though it must be recognized that the creditor bargained with defendant's husband with full knowledge that if the deal went sour, the plaintiff creditor before us was unable to look to the wife's community earnings for payment of the debt.

It is my view that the case at bench presents a convincing example of a situation in which the defendant wife relied upon the former law of Civil Code section 5117. There can be no question of the legitimacy of that reliance. Her actions were meaningfully taken on the basis of that

reliance and, the retroactive application of the new law, Civil Code section 5116, would not only disrupt her actions but completely nullify them. Under these circumstances, the retroactive application of section 5116 to defendant in the case at bench ought to be deemed a violation of defendant's constitutional due process and equal protection rights.

I would therefore modify the judgment rendered by the trial court by adding to the modification made by the majority a further modification that would exclude from defendant's liability her community earnings and any property that is traceable to her community earnings.

A petition for a rehearing was denied February 21, 1978. Jefferson (Bernard), J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied May 1, 1978. Bird, C. J., Mosk, J., and Manuel, J., were of the opinion that the petition should be granted.