**In re Robert Glenn SKIPWITH and Roberta Rae Skipwith, fdba Nature Land Farms, Debtors.**

**Bankruptcy No. 80–01274–M.**

United States Bankruptcy Court, S. D. California.

March 3, 1981.

---

Louis M. Karp, James McCafferty, San Diego, Cal., for debtors.

Philip J. Giacinti, Jr., San Diego, Cal., Trustee.

## MEMORANDUM DECISION REGARDING TRUSTEE'S OBJECTIONS TO EXEMPTION CLAIMS

JAMES W. MEYERS, Bankruptcy Judge.

### I

This dispute brings into focus several issues concerning the availability of state and federal exemptions to joint debtors who have sought relief under the United States Bankruptcy Code ("Code"). The debtors, Mr. & Mrs. Robert Skipwith, filed their Chapter 7 petition on May 19, 1980. The trustee, Mr. Philip J. Giacinti, Jr., filed his objections to certain claims of exemption contained in their petition. A hearing was then held before this Court on the issues presented. Having now had an opportunity to reflect upon these questions, this Court finds that the objections should be sustained in part. This opinion will set forth the reasoning behind that decision.

### II

### FACTS

The debtors currently own improved real property situated in this district with an estimated fair market value of $75,000. This property was acquired by the debtors during their marriage and is therefore community property. See Cal.Civ.Code § 5110 (West). The property is encumbered with liens totaling $32,661, leaving an equity for the debtors of over $42,000. On March 11, 1980, the debtors sought to perfect a homestead in this property, and to that end, Mrs. Skipwith executed and had recorded, a declaration declaring the premises to be a homestead and stating that the declaration was filed for the joint benefit of herself and her husband.

Among their other assets was a promissory note payable to the debtors which was secured by a deed of trust. This asset is also community property. See Cal.Civ.Code § 5110 (West). The note was executed by Mr. & Mrs. Daniel Cayan pursuant to an agreement with the debtors whereby the Cayan's purchased a parcel of "farmland" from the debtors. The amount owing on the note is $12,875.

Both of these assets were claimed exempt by the debtors. Mr. Skipwith sought to utilize the federal exemptions contained in Section 522(d) of the Code to shield the note.[1] See 11 U.S.C. § 522(d). Mrs. Skipwith elected to claim a state homestead in their residence. See Cal.Civ.Code §§ 1237 et seq. (West).[2]

### III

### DISCUSSION

#### A. CLAIM OF EXEMPTION OF PROMISSORY NOTE

The trustee's objection to the debtors' exemption of the promissory note is premised on the law of community property

---

1. Section 522(d)(5) allows a debtor to exempt his "aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection [$7,500], in any property". 11 U.S.C. § 522(d)(5).

2. The debtor specifically claimed the $40,000 homestead provided under Section 1260.1 of the California Civil Code. See Cal.Civ.Code § 1260.1 (West).

in California. The trustee argues that one joint debtor, here Mr. Skipwith, can exempt only his "aggregate interest" in a community asset. In this case the trustee suggests that this amount is $3,950, or one half of the $7,900 exemption afforded by Section 522(d)(5). This claim is based on the view that since a spouse's interest in community property is "present, existing and equal . . . .", see Cal.Civ.Code § 5105 (West), one joint debtor is entitled to exempt only one half of a community asset. Here then, Mr. Skipwith's "aggregate interest" in the note is said to be only $3,950, and the estate is thus entitled to the remaining $3,950.

The debtors, naturally, take issue with this reasoning. They point out that community property interests are not "divisible in a bankruptcy context . . . ." They further argue that each spouse has an undivided interest in all of the community property and that the exemption given by Section 522(d)(5) applies to "any property". By this, the debtors are taken to mean that the exemption in Section 522(d)(5) applies to all property claimed exempt by a joint debtor regardless of its status.

The extent of a joint debtor's federal exemption rights in community property was recently defined by this Court in *In re Smith,* 8 B.R. 375 (S.Cal.1980). In *Smith,* this Court determined that if only one joint debtor claims a federal exemption under Section 522(d) in a piece of property, then it will only be recognized to the extent of the debtor's aggregate interest in the property. In California community property that interest cannot exceed 50% of the value of the property in question.

■ Here the note is valued at $12,875, with Mr. Skipwith's interest being one half, or $6,437.50. Therefore, Mr. Skipwith's claim of exemption in the property will be recognized only in the amount of his individual interest.

## B. *CLAIM OF HOMESTEAD EXEMPTION ON RESIDENCE*

### 1. *Right to State Homestead Exemption*

In this case Mrs. Skipwith has claimed a homestead exemption in the amount of

$40,000 in the debtors' residence, in which they had an equity of $42,339. Mrs. Skipwith made this claim relying on California statutes providing for homestead protection. *See* Cal.Civ.Code §§ 1237 *et seq.;* 11 U.S.C. § 522(b)(1). Mr. Skipwith has not made any claims under California law, but has instead chosen the new federal exemptions provided in the Code. *See* 11 U.S.C. § 522(d).

Shortly after this matter was taken under submission, Judge Herbert Katz, of this district, issued his opinion in *In re Scott,* —— B.C.D. —— (S.Cal., No. 80–00732–K, Oct. 24, 1980). In that decision, Judge Katz held that California law requires the union of both spouses in claiming the benefits of the state homestead exemption. *Scott* would preclude one joint debtor from taking advantage of the new federal exemptions while the other spouse was claiming the full "head of household" California homestead exemption. Slip op. at 8. *See also In re Dill,* 6 B.R. 396 (Bkrtcy.N.Cal. 1980). The *Scott* decision appears to reach a conclusion in direct conflict with that reached by two of our colleagues located in other California districts. *See In re Ancira,* 5 B.R. 673, 6 B.C.D. 864 (Bkrtcy.N.Cal. 1980); *In re Collins,* 5 B.R. 675, 6 B.C.D. 834 (Brktcy.N.Cal.1980); *Matter of Brosius,* 7 B.R. 811 (Brktcy.C.Cal., 1980). These courts focus on Section 522(m) of the Code which allows each joint debtor the freedom to choose between the state and federal exemptions. Both courts then go on to find that in California, one joint debtor can claim the full benefits, as the head of household, of the state homestead statutes, while the other spouse claims the federal exemptions.

The questions discussed in these decisions are inherently raised by the trustee in his challenges to the debtors' claims of exemption, although initially they were not specifically addressed by the parties. In considering the conflicting authorities, which includes one decision by a fellow member of this district's bankruptcy bench, it is neces-

sary for this Court to reach its own independent determination on the issues presented. *See e. g., White v. Baltic Conveyor Company,* 209 F.Supp. 716, 722 (N.J. 1962). With this end in mind, the parties were asked to further brief the Court and these briefs have now been received.

■ In examining the debtors' claims of exemption it should be noted that their claims enjoy a presumption of validity with the burden of challenging them being on the trustee. *See In re Crump,* 2 B.R. 222, 5 B.C.D. 1235 (Bkrtcy.S.Fla.1980). Also, California law favors homesteads for they are constitutionally authorized, statutorily enacted and liberally protected. *See Lee v. Brown,* 18 Cal.3d 110, 113, 132 Cal.Rptr. 649, 553 P.2d 1121 (1976); *In re Howell,* 638 F.2d 81 (9th Cir. 1980). The broad purpose of the homestead law is to promote the security of the home by placing such property beyond the reach of the consequences of the home owner's economic misfortune. *See* Adams, *Homestead Legislation in California,* 9 Pac.L.J. 723 (1978). This liberal treatment accorded homestead claims by the California courts must be respected by this Court. *See Towers v. Curry,* 247 F.2d 738, 740 (9th Cir. 1957).

■ Under Section 522 of the Code an individual debtor may choose the federal exemptions stated in Section 522(d), or may choose any exemptions to which entitled under other applicable law, either state or federal. In a joint case this freedom of choice is clearly awarded to *each* debtor under Section 522(m). However, in making this choice a debtor can only receive the benefits of a state created exemption provision if the debtor is eligible therefor and has properly perfected the claim according to state law. This is because there is nothing in the Code which suggests that when a debtor chooses to utilize state exemptions, that the debtor is free from the restrictions established by state law. *See In re Lowe,* 7 B.R. 248, 250 (Bkrtcy.E.Wash.1980). Thus, a joint debtor may select the state exemptions, but must abide by the state rules regulating the grant of such protection.

*See In re Ageton,* 5 B.R. 323, 325, 6 B.C.D. 706, 707 (Bkrtcy.Ariz.1980).

California law, as summarized in *Matter of Brosius,* reflects that:

> [c]ase law holds that the California homestead exemption extends to the entire interest of both spouses in the property. *Strangman v. Duke,* 140 Cal.App.2d 185, 295 P.2d 12 (1956); *Schoenfeld v. Norberg,* 11 Cal.App.3d 755, 90 Cal.Rptr. 47 (1970). However, under the California Homestead Act (C.C. § 1237 *et seq.*), although it is not necessary for both spouses to join in executing and claiming the homestead exemption, it is always filed for the *joint benefit of both spouses.* C.C. § 1262, 1263. Under California law, there appears to be no provision for a married person to file a homestead for his or her own benefit absent legal separation. C.C. § 1300.

*Matter of Brosius, supra,* 7 B.R. at 812–13 (emphasis added). *See also Harley v. Whitmore,* 242 Cal.App.2d 461, 466–67, 51 Cal. Rptr. 468 (1966).

■ Now the Court in *Brosius* points to the fact that under California law married couples do not have to physically join in the homestead declaration and either spouse can declare the homestead. *See* Cal.Civ. Code § 1262 (West). However, focusing on the mechanics established to declare a homestead overlooks the essential of California law that the declaration is for the *joint benefit of both spouses.* The state has found the protection of the family residence to be of such importance that it allows either spouse to file the necessary declaration, even absent the consent of the other spouse. But once a homestead is filed it provides protection of both spouses' interests in the property. This being the effect of California law, then this Court finds itself in accord with the conclusion announced in *Scott,* that once the homestead is declared then both spouses become part thereof for it requires the union of both for a valid "head of a family" homestead to be perfected by a married couple. *See In re Scott, supra,* slip op. at 8.

In recognizing these state constrictions regulating homestead exemption claims we do not interfere with the election provided for in Section 522(m). Joint debtors still have the freedom to elect exemptions at their sole discretion. Obviously in states such as California, homeowners may feel compelled to jointly claim the state homestead given the economic realities created by this most liberal homestead provision. However, in other instances, joint debtors may find benefit in splitting their claims between state exemptions, not requiring a joint claim, and federal exemptions. Further, it must be remembered that Congress ceded to the states the power to bar entirely the selection of the federal exemptions listed in Section 522(d). *See* 11 U.S.C. § 522(d). This California restriction on the homestead exemption must be considered as but a partial exercise of this power.

Given that the debtors did not have the benefit of the decision, announced in *Scott* and restated here, then in the interest of justice, the debtors should not be bound by their previous claims. *See Matter of Mertsching,* 4 B.R. 519, 6 B.C.D. 445 (Bkrtcy.Idaho 1980). Instead they will be allowed 20 days within which to amend Schedule B–4. As it appears likely that the debtors will find advantage in jointly selecting the California "head of a family" homestead exemption, then this Court will consider the amount allowable to these debtors under this exemption.

### 2. Amount of Allowable Homestead Exemption

The trustee's objection relies on the fact that the value of the debtors' equity in their homestead exceeds the amount of the allowable homestead exemption. Also, the debtors incurred certain debts when the "head of a household" homestead exemption was set at $30,000.[3]

The trustee claims that these pre-existing debts preclude the debtors from taking ad-

vantage of the 1979 increase in the homestead exemption. He argues that to allow the higher amount would unconstitutionally impair those pre-existing creditors' contractual rights against the debtors. *See e. g., England v. Sanderson,* 236 F.2d 641 (9th Cir. 1956). The trustee then goes on to question his own ability to make the impairment argument on behalf of unsecured creditors under the provisions of the Code. He ultimately suggests, though, that Section 544 allows him to "avoid" the homestead claim.

The debtors' response to all this is quite brief. They merely suggest that rights accruing under Section 544(a) are determined as of the filing date of the petition. Here, at the filing of the petition the allowable homestead was $40,000. This, they claim, is the amount against which any of the trustee's rights under Section 544 are measured.

██ The California courts have long held that a statute which increases a debtor's exemption is unconstitutional if it is applied to the claim of a creditor in existence prior to the law, even though the creditor had acquired no specific lien at the time of the increase. *See In re Rauer's Collection Co.,* 87 Cal.App.2d 248, 253, 196 P.2d 803 (1948); *Robertson v. Willis,* 77 Cal.App.3d 358, 366, 143 Cal.Rptr. 523 (1978). The rationale of these decisions is that to give such amendments retroactive application would violate state and federal constitutional provisions forbidding state impairment of the obligations of contracts. *See* Note, *Contracts Clause Prevents Exemption Change,* 1 Stan.L.Rev. 350 (1949). *See also Daylin Medical & Surgical Supply, Inc. v. Thomas,* 69 Cal.App.3d Supp. 37, 138 Cal.Rptr. 878 (1977); *W. B. Worthen Co. v. Thomas,* 292 U.S. 426, 431–32, 54 S.Ct. 816, 817–818, 78 L.Ed. 1344 (1934). Under California law, then, to determine the applicable homestead exemption, the Court must look to the amount of the exemption in force when the debt was incurred.

---

3. The recent history of increases in this exemption reveals that on January 1, 1977, the amount rose from $20,000 to $30,000, *see* 1976 Cal.Stats., effective January 1, 1979, it was increased to $40,000, *see* 1978 Cal.Stats., and effective January 1, 1981, it was increased to $45,000. *See* 1980 Cal.Stats.

### a. Treatment Under the Bankruptcy Act

Under the Bankruptcy Act ("Act"), which covered cases filed prior to October 1, 1979, a bankrupt was entitled to all exemptions prescribed by federal or state laws "in force at the time of the filing of the petition ...." Section 6 of the Act. The Ninth Circuit Court of Appeals interpreted Section 6 by applying California law, as stated in *In re Rauer's Collection Co.*, when determining the proper amount of California homestead exemptions. This was first announced in *England v. Sanderson*, which held that when there existed creditors whose claims arose prior to an increase in Section 1260 of the California Civil Code, the bankrupt was only entitled to the exemption in effect at the time he became indebted to the earliest creditor and the excess equity in the homestead all came under the trustee's administration. The pre-existing creditors were not required to apply to state courts in order to perfect their interests as the trustee assumed the rights of a pre-existing creditor under Section 70(c) of the Act. *England v. Sanderson, supra,* 236 F.2d at 643. *Accord, Towers v. Curry, supra,* 247 F.2d at 740; *Miguel v. Walsh,* 447 F.2d 724 (9th Cir. 1971); *In re Bassin,* 637 F.2d 668 (9th Cir. No. 1980); *In re Oliver,* 4 B.C.D. 49, 50 (S.Cal.1978). Thus, according to *England v. Sanderson* the bankrupt only received the benefit of the exemption amount in force on the date of the incurrence of the oldest of the unpaid obligations.

The holding of *England v. Sanderson* has been the subject of much criticism. *See Swenor v. Robertson,* 452 F.Supp. 673, 677 (N.Cal.1978); *Matter of Echavarren,* 2 B.R. 215, 218, 5 B.C.D. 1229, 1230–31 (Bkrtcy. Idaho 1980); Treister, *The Effect in Bankruptcy of the Increased Homestead Exemption,* 39 Cal.S.B.J. 143 (1964) ("Treister").

See also *Sturgeon v. Steele,* 563 F.2d 1154 (4th Cir. 1977). Judge Hilgendorf in his critique, classified the Ninth Circuit's approach as the "minority rule". *See Matter of Zahn,* 2 B.C.D. 1609, 1613 (E.Wis.1977).[4] The gist of this criticism was that *England v. Sanderson* had incorrectly relied on Section 70(c), the so-called "strong-arm" clause of the Act, to give the trustee the status of a pre-existing creditor. It was claimed that this was in error, with the Supreme Court making it clear, in *Lewis v. Manufacturers Nat. Bank,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), that the Section 70(c) creditor was one who both extended credit and obtained a judicial lien as of the date of bankruptcy and not at an anterior point in time. *See Swenor v. Robertson, supra,* 452 F.Supp. at 676. Under this argument the trustee could not assert the rights of a pre-existing creditor.

To begin our analysis we start with Section 70(c), as amended in 1966, which stated in pertinent part that:

> The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists.[5]

Bankruptcy Act § 70(c).

In 1954, then Circuit Judge Harlan declared that under Section 70(c) the trustee could enforce the rights of hypothetical

---

4. This opinion was the subject of a most unusual accolade when it was adopted and republished by both the district court and the Seventh Circuit Court of Appeals in affirming on appeal. *See Matter of Zahn,* 452 F.Supp. 1341 (E.Wis.1978), *aff'd,* 605 F.2d 323 (7th Cir. 1979).

5. The 1966 amendment made changes which are immaterial to our analysis. *See* 4B Collier on Bankruptcy, ¶ 70.47[5] (14th ed.) ("Collier").

creditor who had extended credit to the bankrupt at an imaginary date prior to bankruptcy. *See Constance v. Harvey*, 215 F.2d 571, 575 (2d Cir. 1954). Two years later the Ninth Circuit released the *England v. Sanderson* case citing *Constance v. Harvey* in passing, but did not appear to rely on that Second Circuit case in any significant way. 236 F.2d at 643 n.7. In 1961, the United States Supreme Court renounced the essential holding of *Constance v. Harvey* when it ruled that the rights of creditors, existing or hypothetical, to which the trustee succeeds under Section 70(c) are to be ascertained as of the date of filing the petition in bankruptcy and not at an earlier time. *See Lewis v. Manufacturers Nat. Bank, supra*, 364 U.S. at 607, 81 S.Ct. at 349. In this decision Justice Harlan joined and confessed that his opinion in *Constance v. Harvey* had been ill-considered. 364 U.S. at 610, 81 S.Ct. at 350. In 1962, the Ninth Circuit then had an opportunity to consider the significance of *Lewis* when it decided *Pacific Finance Corporation v. Edwards*, 304 F.2d 224 (9th Cir. 1962). In *Pacific Finance* the Ninth Circuit held that Section 70(c) grants to the trustee the status of a lien creditor whenever an *actual creditor* exists who could have become a lien creditor noting that:

> the clause "whether or not such a creditor actually exists" refers only to a "creditor then holding a lien thereon." Under our construction of § 70, sub. c the trustee is empowered to exercise the powers given him even if no actual creditor has obtained a lien, but he cannot do so if no actual creditor could have obtained a lien.

304 F.2d at 228. This decision has also had its share of criticism. *See* 4B *Collier, supra*, ¶ 70.46 at 559 n.7. Finally, in 1980, the Ninth Circuit considered the impact of *Lewis* in a situation much the same as that presented in *England v. Sanderson* and reaffirmed that questioned authority. In *Bassin* the Court determined that neither *England v. Sanderson*, nor *Pacific Finance*, were at odds with the *Lewis* case. *In re Bassin, supra*, 637 F.2d at 670–72.

In effect, the Ninth Circuit has construed *Lewis* to be concerned with when the trustee's special rights and powers as a *lien creditor* arise, but not to be controlling on whether the trustee succeeds to the rights and powers of actual creditors regardless of from when these rights and powers date. While this approach may be the "minority rule", it certainly is a valid analysis given the peculiar language used in Section 70(c).

### b. *Treatment Under the Code*

Here the debtors would be claiming their homestead under state law pursuant to Section 522(b)(2)(A) which allows the exemption of property exempt under state or local law "applicable on the date of the filing of the petition". 11 U.S.C. § 522(b)(2)(A). This provision tracks the language of the provisions contained in the Act. *See* S.Rep.No. 95–989, 95th Cong., 2d Sess. 75 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

To determine the relevant powers ceded to the trustee under the Code we must first read Section 544 which states that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and
>
> (3) a bona fide purchaser of real property from the debtor, against

whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544. Section 544(a) is derived from Section 70(c) of the Act and gives the trustee the rights and powers of a judicial lien creditor, a creditor holding an execution returned unsatisfied and a bona fide purchaser of real property from the debtor. *See In re Martin,* 6 B.R. 827, 831 (Bkrtcy.C. Cal.1980). This section, in part, is the new codification of the "strong-arm" clause with substantial changes in the language which in some instances will change the result when compared with Section 70(c) of the Act. *See* Levin, *An Introduction to the Trustee's Avoiding Powers,* 53 Am.Bankr. L.J. 173, 174 (1979). Of particular importance is the change which makes it clear that the trustee gains the rights and powers of a creditor who extends credit to the debtor "at the time of the commencement of the case". The creditor referred to in Section 544(a) is a hypothetical creditor and not the actual creditor required under Section 70(c) of the Act. *But see Pacific Finance Corporation v. Edwards, supra,* 304 F.2d at 224. Since Section 544(a) clearly defines the trustee's powers and rights as arising at the time of bankruptcy this provision cannot be construed to support any power to upset an increase in an exemption status occurring prior to the filing of the petition.

In contrast with subsection (a) we find that Section 544(b) does clothe the trustee with certain rights and powers held by holders of actual unsecured claims. Also, these powers vested in the trustee are not limited in time to the commencement of the case, but may relate back in time. How-

ever, under this provision the trustee may only avoid a *transfer* of an interest in property or an *obligation* incurred by the debtor. The declaration of, or an increase in, a homestead exemption is neither a transfer nor an obligation. *See* 11 U.S.C. § 1101(40) (definition of term "transfer"); Treister, *supra,* 39 Cal.S.B.J. at 146. The greatest potential use of Section 544(b) will be to enable the trustee to assert the rights of actual unsecured creditors under state fraudulent conveyance rules. *See Practicing Under the Bankruptcy Reform Act,* § 10.02 at 122 (1979). Section 544(b) does not make any general grant of rights and powers possessed by actual creditors upon the trustee. Since we have neither a transfer of an interest in property nor a creation of an obligation, then the trustee has no power under Section 544(b) to upset the exemption increase.

Therefore, since the trustee's powers as a hypothetical lien creditor under Section 544(a) are limited to those accruing at the start of the bankruptcy case and he takes no powers under Section 544(b) which would support a challenge to an exemption increase, then the increase of the homestead exemption to $40,000 as of January 1, 1979, must be recognized on behalf of the debtors.

In reaching this decision the Court notes that one bankruptcy court has adopted, in a Code case, the approach formulated in *Swenor v. Robertson. See In re Murillo,* 4 B.R. 612, 614 (C.Cal.1980). This approach must be rejected as the trustee has no power to urge an impairment of contract claim, even if limited solely to those actual claims that pre-date the exemption increase in question. This conclusion is supported by the proposal included in House bill, H.R. 8200, which would have added Section 544(c) giving the trustee additional power to enforce actions of creditors. Bkr.L.Ed., *Legislative History,* § 82.17 at 382 (1979). This general power to step into the shoes of individual creditors would have been limited to instances which would have produced a net benefit for the estate. However, this pro-

posal was rejected in the final enactment demonstrating that Congress had no intention of making any such general grant of power to the trustee to represent the individual interests of creditors. *Compare* H.R. 8200, 95th Cong., 1st Sess. § 544(c) (1977) *with* 11 U.S.C. § 544.

In refusing to allow the trustee to challenge the exemption increase we are in accord with the general rule that one is precluded from challenging the constitutionality of a statute by involving the rights of others. *See In re Wilson*, 4 B.R. 605, 607, 6 B.C.D. 443, 444 (Bkrtcy.E.Wash.1980). Now in ruling that the trustee has no standing to raise the constitutional issue of impairment of contract we are not foreclosing the possibility that individual pre-existing creditors might maintain their own cause of action based on retained rights they may have to attack the increase. If such an action is to be maintained at all it must be done by an actual creditor who extended credit to the debtors prior to January 1, 1979. In order to protect the debtors, such actions will be required to be filed in this Court within a reasonable length of time.

### IV

### CONCLUSIONS

1. The debtors will be allowed 20 days to file an amendment regarding their exemption claims.

2. If either debtor elects the federal exemptions provided by Section 522(d) the claim will not exempt more than 50% of the value of the assets selected if they are community property.

3. If the debtors jointly elect to claim the homestead exemption provided under Cal.Civ.Code § 1260, then the exemption will be allowed in the total amount of $40,000.

4. Creditors who extended credit to the debtors prior to January 1, 1979, will have 90 days within which to file in this Court any actions challenging the homestead exemption increase based upon the reasoning set forth in *In re Rauer's Collection Co.*